## J. & W. TAYLOR *v.* CARPENTER.

There is no difference between citizens and aliens, in respect of their rights in trade marks, or their claim to have such rights protected in our courts.

The court of chancery will grant an injunction against the unauthorized use of a manufacturer's or vender's trade marks, and will decree the payment of the damages sustained thereby.

Where one intentionally uses or closely imitates another's trade marks, on merchandize or manufactures, the law presumes it to have been done for the fraudulent purposes of inducing the public, or those dealing in the article, to believe that the goods are those made or sold by the latter, and of supplanting him in the good will of his trade or business.

And in such a case, it is wholly immaterial whether the simulated article is, or is not, of equal goodness and value with the genuine manufacture.

The right thus protected does not partake of the nature and character of a patent or copy-right. Per Spencer, Senator.

The defendant who is found to have pirated trade marks, must pay the costs of suit.

The venders of an article of trade or manufacture, who have established or become entitled to a particular trade mark which they use, to distinguish such article, are entitled to be protected in its use, although they do not manufacture the goods. Per Lott, Senator, and so adjudged.

The protection of trade marks is among the highest incentives to ingenuity, exertion and fidelity, and one of the greatest securities to the public against imposition. Per Spencer, Senator.

Where on an appeal, the decree below appears to have been made on " the cause being brought to a hearing on the pleadings therein, upon a motion to dissolve the injunction issued in the cause," after a replication has been filed, and it also appears that there were no proofs ; the appellate court will presume that the hearing below was regular, by consent or otherwise, and that the decree was made in due form. If it were irregular, the party complaining should move for redress in the court below.

Decided, Dec. 30, 1846.

THE bill was filed before the Chancellor, by John Taylor and William Taylor against Daniels Carpenter, in March, 1843. The stating part of the bill was in these words.

" Humbly complaining—show unto your honor your orators, John Taylor and William Taylor, of the borough of Leicester, in that part of the kingdom of Great Britain called England ; that for many years past they have been very extensively engaged in manufacturing sewing cotton thread, at Leicester aforesaid, and vending the same in large quantities, not only in England, but throughout the United States, and in particular in the city and state of New York. That their said thread is, and for many years, has been put up for sale in spools, and labelled on the top of the spool ' Taylor's Persian Thread,' and on the bottom of the spool ' J. & W. Taylor, Leicester ;' each spool usually containing two hundred yards, or three hundred yards of thread—and the spools containing two hundred yards being black, and labelled ' 200 yds.' on the bottom of the spool—and those containing three hundred yards being red, and labelled ' 300 yds.' on the bottom of the spool— and on the centre of the same label, on the bottom of each spool, is stamped the symbol or print of a lion rampant.

" Your orators further show unto your honor, that their said thread has been, and is manufactured of various sizes and numbers, to meet the wants of the trade ; and by means of the care, skill, and fidelity, with which your orators have conducted the manufacture thereof for a series of years, their said thread has acquired a great reputation with the trade throughout the United States, and large quantities of the same are constantly required from your orators, to supply the regular demand for the consumption of the country. And your orators have established agencies for the sale thereof, to the wholesale dealers and jobbers in the cities of Boston, New York, Philadelphia, and New Orleans ; and in addition thereto, your orators employ Benjamin Warburton, now residing in said city of New York, as their general agent for the United States, in relation to the sale of their said spool sewing cotton thread.

" And your orators further show unto your honor, that their said thread is known and distinguished by the trade and the public, as ' Taylor's Persian Thread ;' and that your orators were the original manufacturers thereof, and the first who introduced the same to the public. That your orators said general agent, about three weeks since, hearing that complaints were made of the quality of ' Taylor's Persain Thread,' proceeded to investigate the cause of such complaints, and thereupon ascertained that a spurious article of spool sewing cotton thread was

offered for sale by sundry jobbers in the said city of New York, as and for your orators 'Persian Thread ;' and that such complaints had arisen from the fraudulent imposition of such spurious article upon the public.

" Your orators further show unto your honor, that their said agent further ascertained upon inquiry, and your orators charge the facts to be, that the said spurious thread so sold, and offered for sale in the said city of New York, was furnished to the said jobbers by one Daniels Carpenter, of Foxborough, in the state of Massachusetts ; that the said Daniels Carpenter, disregarding the rights of your orators, and fraudulently designing to procure the custom and trade of persons who are in the habit of vending and using your orators said ' Persian Thread,' and to induce them and the public to believe, that his said thread was in fact manufactured by your orators, has engaged extensively in the manufacture of sewing cotton thread, and caused the same to be put up for sale in spools similar to those used by your orators—and so colored, stamped, and labelled as to resemble exactly the said spools used by your orators. And the said spool sewing cotton thread, prepared by the said Daniels Carpenter, and sold by him, and in which he is engaged in selling, as aforesaid, is an exact imitation of the same article which your orators had been manufacturing as aforesaid, and selling in the United States, for many years before the said Daniels Carpenter commenced his said fraudulent imitation thereof. And the said spurious article, although inferior in quality to the genuine Persian thread, manufactured by your orators, can only be distinguished therefrom, (so exact is the said Daniels Carpenter's imitation, as aforesaid,) by a careful examination of its quality, and by its falling short in the number of yards contained on each spool, from the number marked thereon as the contents thereof. And that the general appearance of the spurious article is the same as that of your orators genuine thread, and well calculated to deceive those dealing in the purchase and sale thereof.

" Your orators further show unto your honor, that their said general agent has obtained specimens of the said spurious Persian thread, so sold by the said Daniels Carpenter ; that in the specimens thus obtained, the thread is put upon black spools, of the same size and appearance with those used by your orators ; on the top of which spurious spools there is pasted a round paper label, partly gilt, on which is printed in a circle, the words ' Taylor's Persian Thread,' and in the centre of the circle the number of the thread, and on the other end or bottom of such spurious spools, there is pasted a round white paper label, on which is

printed in a circle, the words ' J. & W. Taylor, Leicester,' and across the label the word ' 200 yds.,' and in the centre of the label there is impressed the figure or symbol of a lion rampant. And in all these particulars of the labels on each end of the said spurious spools of thread, they are exactly like the labels on the respective ends of the spools of your orators genuine Persian thread, as hereinbefore stated.

"Your orators further show unto your honor, that they have not yet ascertained the extent to which the said Daniels Carpenter has carried his said fraudulent imitation of your orators said thread. But your orators said general agent has found the same offered for sale to the trade in three wholesale or jobbing houses in the said city of New York, as Taylor's Persian thread. From which your orators believe, and they therefore charge on their belief, that the said Daniels Carpenter has been, and is engaged in selling his said fraudulent and spurious imitation of your orators Persian thread to a large extent, in various places in the United States—and as your orators are informed and believe, the said Daniels Carpenter is expected daily to arrive in the city of New York, to make further sales of his said imitation of your orators thread.

"Your orators further show unto your honor, that the said fraudulent and inequitable conduct of the said Daniels Carpenter is not only injuring them in the sales of their said genuine Persian thread, and the profits which they would otherwise reasonably make thereon; but by the inferior quality and false measure of the said spurious Persian thread, is greatly prejudicing the reputation of your orators said Persian thread in the market ; and, unless the said imitation is discontinued or prevented, will ultimately destroy the character and standing of the genuine article.

"And your orators also charge that the said spurious article is a fraud and deception upon such of the citizens of New York, and of the United States, as purchase the same, believing it to be the genuine article manufactured by your orators."

The bill prayed for a discovery ; and for an injunction and account in these words, viz. "And that the said Daniels Carpenter, and his attorneys, solicitors, counsellors, agents, and servants, may be enjoined and restrained from manufacturing, selling, or offering for sale, directly or indirectly, any spool cotton sewing thread, manufactured by him, or any other person than your orators, under the denomination of ' Taylor's Persian Thread,' or on spools with the words ' Taylor's Persian Thread,' or ' J. & W. Taylor, Leicester,' printed, painted, written or stamped, or attached or pasted thereon ; or on spools so made, or having any la-

bel, printing, or device thereon, in such manner as to be a colorable imitation of your orators said Persian thread, usually known as ' Taylor's Persian Thread.' And that the said Daniels Carpenter may be decreed to account to your orators for all the profits which he has made by the sale of his said fraudulent imitation of your orators thread, and all the profits which your orators would have made on the sales of their genuine thread, but for the said Daniels Carpenter's inequitable and wanton piracy of their said names, spools, and labels."

The bill also prayed for general relief, and for process of subpœna and injunction.

In his answer the defendant stated as follows :

" That he is not acquainted with the complainants, but he is informed and believes, that they are subjects of Great Britain, and not citizens of the United States ; and he is willing to, and does admit, that they reside in Leicester, in England ; and that he is informed and believes, that the complainants, or some other persons of the same name with the complainants, have been engaged in vending sewing cotton thread, but in what quantities, or where in England, he is unable to answer ; but he is informed and believes, and therefore admits, that such thread has been vended in large quantities throughout the United States, including the city of New York ; but he is informed and believes, that the complainants are not the manufacturers of the thread so vended by them. And he admits, that the thread so sold by the complainants, or persons of the same name, for many years has been put up for sale on spools, and labelled and marked as in the bill of complaint, for such purpose, is set forth. And that such thread has been, and is manufactured of various sizes and numbers to meet the wants of the trade.

" And this he further admits, that the thread so vended by the complainants, and so marked and labelled, has acquired a great reputation in the trade throughout the United States, and that such reputation is founded on the manufacture thereof, and that large quantities are required to supply the regular demand for the consumption of the country. And he is informed and believes, that the complainants have established agencies in the places and for the purposes mentioned in the said bill, and that Benjamin Warburton is their general agent for the United States.

" And he admits, that such thread is distinguished by the trade and public, as ' Taylor's Persian Thread ;' but he does not know, nor is he informed, save in and by the said bill, that the complainants were the

original manufacturers thereof, or the first who introduced the same to the public.

"That this defendant is a citizen of the United States, and of the State of Massachusetts, residing at Foxborough in that state; and that he has engaged, though not extensively, in the manufacture of sewing cotton thread, which he has caused to be put up for sale on spools, similar to those used by the complainants, and so colored, stamped and labelled, as to resemble exactly, or as nearly as the same could be done, the spools sold by the complainants. And he admits, that the spool sewing cotton thread prepared by him, and sold by him, and which he is engaged in selling, is an exact imitation of the same article which the complainants had been selling in the United States many years before the defendant commenced manufacturing his thread in imitation thereof.

"That the thread so manufactured, and put up and sold by him in imitation of the thread vended by the complainants, is in all respects as good as the thread vended by them, and each spool so put up by the defendant contains as many yards of thread as a spool of like appearance vended by the complainants.

"That he has furnished his thread in the city of New York to the two firms of Russell, Mattison, Taylor & Co. and Shepherd & Howe, to be sold, and has sold some of his thread to other houses in that city, but they well knew this defendant manufactured the same; and as he is informed and believes neither of those firms or houses ever sold, or offered for sale any of said thread, pretending or stating, that it was the same as that vended by the complainants, but on the contrary, they always informed the purchasers thereof, that the same was manufactured by this defendant.

"And this defendant submits to this court, that the said complainants, subjects of Great Britain, and not citizens of the United States, could not, and did not acquire by reason or means of any matters or things set forth in the said bill of complaint, nor have they now any exclusive right or rights of vending spool sewing cotton thread put up, or to be put up and labelled, or marked in the manner set forth in the bill; but that this defendant has full right and lawful authority, to manufacture thread in the United States, and to put up the same on spools, and with labels in all respects similar to the thread, spools and labels vended by the complainants, and to sell and dispose of the same in any part of the United States, so prepared, put up and labelled. And he prays the same advantages from this objection, as if stated by way of plea or demurrer.

" He admits, that the statements contained in the bill, in relation to spools, labels and marks, on which the thread manufactured by this defendant is put up, are correct and true ; and that he,has been, until the service of the injunction issued in this cause, engaged in selling his thread, put up, labelled and marked as aforesaid, to some extent, but not to a large extent, in various places in the United States. And he supposes, and therefore admits, that the introduction of the thread so manufactured by him, in the market, does lessen the amount of sales of thread by the complainants, and to that extent the complainants may be injured ; but he denies that the reputation of the thread vended by the complainants is at all injured by the means stated in the bill. And he also denies, that the thread manufactured by him, is inferior in quality, or false in the measure, as charged in the bill.

" He admits, that such of the citizens of the United States, and of the state of New York, as purchase the thread manufactured by him, believing it to be the thread vended by the complainants, are mistaken, and to that extent deceived ; but he expressly denies, that those citizens are thereby injured, or in any manner damnified.

" He says, that before he commenced the manufacture and putting up of the thread as stated, other citizens of the United States had been in the habit, and still continue to manufacture sewing cotton thread, and to put up the same on spools, labelled, colored and marked, in imitation of the thread and spools so vended by the complainants, and to sell the same in various parts of the United States."

A general replication was filed to the answer ; but no proofs were taken in the cause.

After the replication was in, the defendant moved to dissolve the injunction on his answer. When the Chancellor decided that motion, it being agreed that it involved the merits of the cause, and the defendant desiring a speedy disposition of the suit with a view to an appeal ; a final decree was then made by the assent of the parties, on the 6th of January, 1845. By this decree the injunction was made perpetual, the defendant was charged with the costs of the suit, and the complainants were permitted, at their election, to take a reference to a master to ascertain the damages which they had sustained by reason of the defendant's simulating their name and trade marks. If they so elected, the cause might be set down for further directions upon the master's report ; otherwise the decree was to be considered as final.

The following opinion was delivered by his Honor the Chancellor, on deciding the cause, which was argued by,

*Murray Hoffman,* for the complainants, and

*Joseph Blunt,* for the defendant.

THE CHANCELLOR.—The fact that the complainants are subjects of another government, and the defendant is a citizen of the United States, as stated in the answer, cannot alter the rights of the parties, or deprive the complainants of the favorable interposition of this court, if those rights have been violated by the defendant. So far as the subject matter of the suit is concerned, there is no difference between citizens and aliens. And the only question proper to be considered is, whether the defendant has the right, as he insists he has, to pirate the trade marks of the complainants, with impunity, and to palm off upon the community a simulated article as the genuine Taylor's Persian thread, manufactured and put for sale by them.

In the case of *Bell* v. *Lock*, (8 Paige's R. 75,) I had occasion to examine the question, whether an injunction bill could be sustained for the fraudulent assumption of the name of the complainant's newspaper, for the purpose of deceiving the public and supplanting him in the good will of his business ; and I then came to the conclusion, that this court had jurisdiction to interfere for the protection of the complainant's rights in such a case. I then referred to the case of *Knott* v. *Morgan*, (2 Keen's Rep. 213,) where the present Master of the Rolls, in England, granted an injunction to restrain the defendant from running an omnibus, having upon it the simulated names and devices which were previously in use by the complainant, for the purpose of inducing the public to believe that it was the complainants' omnibus, and thus to deprive the latter of a part of the good will of his business by this fraudulent device.

Since the case of *Bell* v. *Lock* was before me, the case of *Millington* v. *Fox*, (3 Myl. & Craig's Rep. 338,) was decided by Lord Cottenham, which fully sustains the claim made by the complainants in the present case. There the complainants had for many years been engaged in the manufacturing of steel of a particular name or mark thereon, indicating the person by whom it was manufactured. The defendants, without being aware that this was the trade mark of the complainants, or of any individual, commenced the manufacture and sale of steel with the complainants marks thereon. And a perpetual injunction was granted against the use of such marks, although the Lord Chancellor was satisfied no fraud was intended.

He says, that having come to the conclusion that the complainants were entitled to the marks in question, they had an undoubted right to the assistance of a court of equity to enforce that title by a perpetual injunction. But as the defendants had given notice of their intention to abandon the use of the marks, as soon as they discovered that they belonged to the complainants, they were not charged with costs. A case is also cited by Lord Henley in his treatise upon injunctions, where a manufacturer of blacking was restrained from using labels in imitation of those used by the complainant in that case. (See also, *Ransom* v. *Bentall*, 3 Law Journal, 161.)

In the case under consideration, the defendant admits that he has intentionally pirated the complainants names, as well as their other marks, and that he put up the spools of thread manufactured by him, and stamped and marked with the marks, and so colored, stamped and labelled as to resemble exactly, or as nearly as could be done, the spools used by them.

After such an avowal, no one can doubt for a moment, that he did it for the fraudulent purpose of inducing the public, or those who were dealing in the article, to believe that it was in fact the thread manufactured and put up by the complainants, and with the intention of supplanting them in the good will of their trade and business. And it is wholly immaterial, whether the simulated article manufactured by the defendant is, or is not of equal goodness and value to the real " Taylor's Persian Thread," manufactured and put up for sale by the complainants ; they are, therefore, entitled to the relief prayed in this bill.

The injunction must be made perpetual, and the defendant must pay to the complainants their costs of this suit ; and if the complainants wish it, they may have a reference to a master, to ascertain and report the amount of their damages, and a decree, that the defendant pay the amount of such damages upon the coming in and confirmation of the master's report.

————

The defendant appealed from the decree of the Chancellor, to the Court for the Correction of Errors, where the cause was argued in October, 1846, by the same counsel, who were heard before the Chancellor ; and the decree was affirmed on the 30th of December, 1846, by a vote of twenty-two against two.

The following opinions were delivered in that court, (for which the

author is indebted to Judge Lott, as well as to Judge Denio, the State Reporter, in advance of the regular publication of his reports.)

BEARDSLEY, Justice.—The complainants below, the Taylor's, reside in England, and are extensive manufacturers of thread which they sell in the United States, particularly at New York. Their thread has for a long time been put up in spools, labelled on the top of the spools, " Taylor's Persian Thread," and on the bottom of the spools, " J. & W. Taylor, Leicester."

The defendant, (Carpenter,) has been engaged in the manufacture of thread in Massachusetts in imitation of the complainants, and which he has labelled like theirs. His thread labelled in this spurious manner, he has sold and offered to sell, in the city of New York.

An injunction was granted on the bill. The case was heard on bill, answer and replication, and a decree entered making the injunction perpetual with costs, &c., and directing a reference to a master to ascertain the damages the complainants had sustained by the fraudulent use of their trade marks.

1. The injunction was proper. The complainants have a right to call upon the court to restrain the defendant from fraudulently using the words and devices which they had previously taken for the purpose of distinguishing their property. (*Knott* v. *Morgan*, 2 Keen, 213 ; *Millington* v. *Fox*, 3 Mylne & C. 338 ; *Bell* v. *Lock*, 8 Paige, 275.) A man cannot be permitted to sell his own goods under the pretence that they were the work of another, when the fact is not so. (*Taylor* v. *Carpenter*, decided by Judge Story. See report.)

2. An order for an account is also proper that the remedy may be complete in the case. (3 Mylne & C. *supra ; Bailey* v. *Taylor*, 1 Russ. & M. 73 ; *Whittington* v. *Wooler*, 2 Swanst. 428.) *Delondre* v. *Shaw*, (2 Simons, 237,) was decided on the ground that the plaintiffs had not any *interest* in the labels and seals. The V. C. said, the court cannot protect the *copy right* of a foreigner; and therefore the fact that the seals were *invented* by Pelletier, (a foreigner,) did not aid the case.

3. A final decree was proper. The case had been heard on the pleadings. So at least, I understand the decree as printed at page 9. We cannot say whether it were in a condition for final hearing if either party objected. Probably the pleadings disclosed the whole case, and it was by consent heard in full on the merits when the motion to dissolve the injunction was made.

The decree should be affirmed with costs.

LOTT, Senator. The principal question involved in this case is so fully discussed by the Chancellor and by Mr. Justice Story, (whose opinion in a cause between the same parties in the United States Circuit Court, Massachusetts district, decided in October term, 1844, has also been laid before this court,) that it would, in my opinion, be an act of supererogation to attempt to add to the views presented by them. It is sufficient to say, that I concur in those views, and in the result at which they arrived. (See also *Coats* v. *Holbrook*, reported in 3 N. Y. Legal Observer, 404, where the subject is elaborately and ably examined.) It may be proper, however, to advert to one of the grounds insisted on and urged by the opening counsel of the appellants, in favor of the reversal of the decree appealed from. He appears to assume that the aid of the Court of Chancery was invoked by the complainants below to secure them against a fair, honest and legitimate competition in their business. Such is not the scope or design of their bill. Its object is to prevent the commission of a fraud, not only on them, and to the prejudice of their rights, but on the public, by the sale of an article with an imitation of their " trade mark" thereon in such a manner as to deceive purchasers, and through the false representations thus held out, to deprive the owners thereof of the profits of their skill and enterprise.

Honest competition relies only on the intrinsic merits of the article brought into market, and does not require a resort to a false or fraudulent device or token. That certainly cannot deserve the appellation, which studiously gives to the product of pretended superior skill, the name and exact external resemblance and imitation of the article with which it professes to compete.

A disguise is not usually assumed for an honest object. It is a mark more characteristic of deception and fraud. It defeats the very end and object contemplated by legitimate competition, the choice to the public to select between the articles exposed to sale ; and operates as a deception and imposition on the dealer. It is to prevent such a course of transaction and dealing, that the interposition of the Court of Chancery is asked, and I have no doubt it is within its proper jurisdiction to restrain a proceeding of such a character by injunction. It was urged that although it might be a proper case for such relief, if it were a controversy between citizens of the United States, yet that " the complainants are foreigners, and are not entitled to ask the interference of the courts of this country except upon the ground of reciprocal courtesy and comity on the part of their own country, and upon this ground they cannot contend, as the legislation of England is eminently hostile to the

commercial interests of other nations." From this position I entirely dissent. It was well said by the counsel for the respondents, " that it is an inauspicious time for the success of such an argument, when the land is sounding with congratulations at the relaxation of England's com-mercial code ; when it has been asserted by one of her eminent states-men, ' that the foundations of an amity are now laid, which the convul-sions of nations shall not shake nor time corrode.' "

But be that as it may, I trust our courts will never recognize a differ-ent rule of right and justice between any class of suitors ; that their re-cords will never show that a fraud by a citizen is sanctioned, because it is practised on a foreigner in the prosecution of a legitimate business, within our jurisdiction, or that a suitor is denied the ordinary remedy to protect him in the enjoyment of his rights, because he is a "*foreigner.*" The honor of our country and the character of its jurisprudence, forbid that justice and equity shall ever be administered on such narrow, pro-scriptive and inequitable principles. Every dictate of enlightened wis-dom requires that a foreigner, especially in a commercial country, shall be entitled to the same protection of his rights as a citizen. If other nations are chargeable with wrong and injustice in this respect, it is cer-tainly no reason why we should follow their example. Retaliation in a course of injustice, is not a salutary principle to enforce in the administra-tion of *justice*. But I do not think that England is amenable to the charge, to the extent suggested by the counsel of the appellant. All that was decided in *Delondre & Pelletier* v. *Shaw*, (2 Simons Rep. 237,) cited by him in support of it is, that " the court will not protect the copy-right of a foreigner." The Vice-Chancellor however expressly recog-nizes the rule that an injunction will be granted to restrain the fraudu-lent sale of a spurious article, but he says that he could not intend a fraud where none was alleged.

It is immaterial, in my opinion, that the complainants were not admitted by the answer to be the manufacturers of the article. It was conceded that they were the venders, and that they were ex-tensively engaged in the sale thereof in the city of New York and throughout the United States ; that they had established agencies in that city, and in several other cities in the union ; and that large quantities were required to supply the regular demand for the con-sumption of the country. There is nothing shown to impeach or ques-tion their right to sell. They, therefore, are the parties to be affected by any fraudulent interference with their sales. Their thread was dis-tinguished by the trade and public as " Taylor's Persian Thread," and

had acquired a great reputation throughout the United States.   It was upon spools with certain marks, which afforded the public the means of identifying it.   The thread manufactured by the defendant, was prepared in exact imitation of the article sold by the complainants, and was put on spools similar to those used by them, and so colored, stamped and labelled as to resemble them exactly, or as nearly as could be done. It is evident, therefore, that this device was calculated, and no doubt intended, to secure to the defendant in the sale of his thread, the benefit of the reputation which the complainants had acquired.   It is immaterial whether the thread was of the same or inferior quality.   The natural effect of the transaction, was to palm on the public a different article from that which they intended to buy, and to interfere with the right of the complainants to profits which the reputation of their article justly entitled them to.   The defendant, it is true, alleges in his answer that the deception was made known to the firms or houses, to whom he made sales of his thread, and that they never stated or pretended in selling or offering it for sale, that it was the same as that vended by the complainants, but on the contrary, that " they always informed the purchasers thereof that the same was manufactured by the defendant." Although this is an allegation, from its very nature, not entitled to much credit, yet, assuming it to be true, it does not alter the case.

The thread was an article of general merchandize, and the deception may not have been communicated to dealers or purchasers in small quantities.   Indeed it appears incredible, that a studied effort should be made, to counterfeit an article, yet that the fraud, should be as extensively circulated as the reputation of the article itself.   The object of such a course is not easily seen, and it is requiring more credulity than is ordinarily possessed, to give the allegation credit.

The only point remaining to be considered is the objection made to the form of the decree.   It purports to have been made on " a hearing on the pleadings therein, upon a motion to dissolve the injunction issued in the cause," and is final.

It is insisted that such a decree could not be made on a mere motion to dissolve an injunction.   If that be conceded, yet it does not clearly and satisfactorily appear, that it was so made.   The Chancellor, in his opinion, in support of it, says, the case was heard upon bill and answer, as upon a final hearing, and the decree, although it states, that it was made upon a motion to dissolve the injunction, also declares, that the cause had " been brought to a hearing on the pleadings therein ;" terms peculiarly appropriate to a final hearing and not usual nor applicable

upon such a motion. These apparently conflicting recitals or declarations, are reconcileable on the assumption that although it was originally brought on as a mere motion, yet that it was finally by agreement considered as a final hearing on bill and answer. The notice in pursuance of which it was heard is not in the case, nor is it shown by the certificate of the register what is the true state of the facts.

In this uncertainty, we are bound to assume that the decree which is final, was properly made. It is the duty of the party seeking a reversal, clearly to satisfy the court of the error, if any, in that respect. This he has failed to do.

Indeed it is questionable whether the objection can be taken as the ground of an appeal ; it partakes more of the nature of an irregularity. At all events, it was reasonable that the attention of the court below, should have been called to it, by the party now seeking advantage of it, while it might have been corrected without the costs and expense of an appeal.

Upon the whole I agree with the counsel for the respondents, that " the interests of trade, the comity of nations, the protection of our citizens, require that so palpable and unblushing a fraud upon the right of others, (as is disclosed in this case,) ought not to be permitted to pass unredressed."

The decree of the Chancellor, ought therefore to be affirmed.

SPENCER, Senator.—The decree of the Chancellor is sought to be reversed upon two grounds :

*First,* That it was prematurely pronounced ; and *Second,* That it is contrary to law ; in other words that it is erroneous on the merits.

It is true that when the motion was made to dissolve the preliminary injunction which had been issued, a replication to the answer had been filed. The Chancellor instead of simply denying the motion, made the injunction perpetual, and decreed the payment of costs by the defendant, and directed a reference to a master to report damages, &c., if the complainant should elect within thirty days to take it.

It may not be as usual to pronounce a final decree after the filing of a replication, without taking or closing proofs, as it is when a cause is brought to a hearing on bill and answer. But before a decree will be reversed for this reason, it must be made to appear that some substantial rights have been lost, or a valid defence cut off, or that the decree is founded on erroneous principles.

The replication does not affect any of the matters admitted by the answer. It only puts in issue any denial of facts charged in the bill,

and any new matters of fact set up in avoidance by the answer. The complainant is then at liberty to prove the facts charged and denied, and to disprove the new matter set up in the answer which the defendant has attempted to establish by proof; and such proofs on both sides must be confined to the allegations contained in the pleadings.

On looking with some care into the bill and answer, it seems to me that every material fact stated and charged in the bill, is admitted by the answer; and that none of the denials or new matter stated in the answer, if fully proved on the part of the defendant, would in any degree alter the merits of this case. The cause may be now therefore, decided on its merits.

The principle involved in the merits, is one of great importance to a manufacturing and commercial community; but it is not novel in its character, or in its application to the present case. It involves the question whether or not our law and courts will protect persons in the enjoyment of the legitimate and well deserved fruits of their own ingenuity, industry, integrity and fidelity to the public. And it does not at all trench upon the rights of others, by a course of conduct equally deserving and praiseworthy, to enter the lists of competition, and bear off the palm. But it will not allow them by falsehood, fraud, and forgery, to filch from another his good name, and share it in common with him, or destroy or impair it.

The right claimed by the complainant, does not partake in any considerable, if in any degree, of the nature and character of a patent or copyright, as urged by the counsel for the defendant. He is at full liberty to manufacture and vend the same kind of thread to any extent he pleases, and whenever he choses. He is only required to depend for his success, upon his own character and fame. He may make his spools red, black or white, or he may adorn them with his country's stripes, and stamp upon them its spread eagle, instead of the " rampant lion" of the complainants country. He is only required not to pirate upon the rights of others.

It is of no small importance to a manufacturer and vender of flour or salt, or to a packer of provisions, that his brand should inspire confidence in the public mind, and thereby secure a ready sale; and so of every other manufacturer. And the assurance that he can securely enjoy its exclusive benefit, is always found to be among the highest incentives to ingenuity, laborious exertion, and honorable and faithful conduct, and is one of the greatest securities to the public against imposition. I would not in the smallest degree relax or restrict this salutary

rule of law. It has, in my opinion, been rightly applied in the present case. The cases cited in the opinion of the Chancellor, and the opinion of Mr. Justice Story, in a similar case, between these parties, fully sustain its application here.

The circumstance urged upon the consideration of this court, that the complainants are British subjects, and the defendant is a citizen of Massachusetts, is not worthy of serious refutation. The countries being at peace, the citizens of the one and the subjects of the other, are alike entitled to the same measure of justice in our courts.

Nor is it worthy of the dignity of this court, or of our country, to inquire into the truth of the suggestion made by the counsel for the appellant, that the courts of Great Britain do not afford the same protection to our citizens in like cases, that the respondents ask and seek at our hands. It is enough for us to know that we administer equal and exact justice to all who invoke it. In my opinion the decree of the Chancellor should be affirmed.

BARLOW, Senator.—I fully agree with the learned Chancellor in his opinion on the merits of this case. It is with an ill grace, that the defendant below, asks our courts of justice to protect him in the fraud he is practising upon the rights of even a foreigner.

It was not necessary for the complainants to be under a copy-right, if they could obtain one in their country, or to be citizens, in order to claim protection against counterfeits and forgeries of their labels and marks.

The defendant might exercise the right of manufacturing the same kind of spool and thread, and put it in market, and the complainants could not find fault with the competition. But he cannot complain if he is compelled to act under his own name and responsibility, or at least is restrained from deceiving the purchaser and filching the good name of another manufacturer. And there is no apology or justification, legal or moral, for his counterfeiting the labels and marks of the complainants in order to succeed in market by false colors, under the repute the complainants thread had meritoriously gained, and thereby rear up an unmerited success or competition. Such a course was fraudulent in intention and effect, and should be discountenanced by all honest business communities.

But it is said the decree rendering the injunction perpetual was premature, and should be reversed. If the decree was prematurely entered, it would present a question of regularity which should have been

treated as such below, and at the proper time. But the defendant has treated it as on the merits, without resorting to the proper practice to avail himself of the question as one of irregularity. I shall consider the case therefore, as on a submission on bill and answer. The defendant it is true, denied some material allegations of the bill; but they had a bearing upon the question of damages, rather than the relief on the merits. He admitted sufficient to sustain the bill without further proof, and to entitle the complainants to their perpetual injunction. He could not subsequently deny and disprove those admissions of his answer; and the proof admissible could bear only upon the question of the amount of damages. Although the complainants put in a general replication, it was not a denial of the admissions of the defendant of the statements of their bill. If it were, it would also be a denial of the bill. itself, so far as the statements which were admitted were concerned. It is neither the office nor intent of a replication to go so far. Whilst the decree properly rendered the injunction perpetual, it left the question as to damages open to proof; and if the complainants did not see fit to take any testimony on that subject, the defendant cannot complain.

The decree therefore was right, and should be affirmed.

WRIGHT, Senator.—In the statement of the case by the Chancellor, which precedes his opinion, it is said that the case was heard before him on bill and answer; and he has proceeded to make a final decree in the cause upon that assumption, when in fact, a replication had been filed, and the cause never was in readiness for a final decree. The motion to the Chancellor, was simply for an order dissolving the injunction; and he could only, in the then state of the cause, grant or deny that motion, leaving all the questions arising upon the case, so far as the replication put in issue any facts set up, or not admitted in the answer, to be determined upon the final hearing of the cause. I say the Chancellor has made a final decree. It is settled that granting a perpetual injunction, is a final decree; and it must necessarily be so, as it overcomes all defence, and assumes that the case made by the complainant is fully sustained either by proof or by admissions in the answer. (1 Barbour Ch. Pr. 615.)

In the present case a replication has been filed; and the effect of that is to put in issue by the complainant every allegation in the answer. And yet a final decree can only be made, or the cause be brought to a hearing, on bill and answer, when every fact and allegation in the answer is *admitted* to be absolutely true; and it makes no difference as to

the rule of practice, whether the answer be responsive to the bill or not. (1 Hoffman's Ch. Pr. 495 ; *Brinckerhoff* v. *Brown*, 7 Johns. Ch. Rep. 217.)

The complainant by filing a replication, confesses that upon the bill and answer he would not be entitled to the relief sought by his bill. He in effect asserts that the *defence* set up is not *true in point of fact*, and calls upon the defendant to sustain his allegation by proof; and does not merely insist that the facts thus alleged, *if true*, are insufficient to bar the relief sought ; and his replication also confesses that he has made allegations in his bill which are not admitted by the answer, and which he is bound to *prove* before he can claim the relief asked by his bill. (*Mills* v. *Pittman*, 1 Paige, 490.) It necessarily follows, from this view of the practice and well settled course of proceedings in the Court of Chancery, that the final decree made upon the motion to dissolve the injunction is irregular and should be reversed. It is equally clear to my mind that if the case is to be decided upon the assumption, that no issue was made upon the answer by a replication, the complainants must fail. In this aspect of the case the absolute verity of the answer is to be taken ; and if it does not admit the full truth of the case as made by the bill, or sets up facts to meet the equity relied upon, the bill must be dismissed.

It is alleged as a substantive and material fact in the bill, that the complainants are *manufacturers* as well as *venders* of the thread, the trade marks of which they allege the defendant has simulated. This is, as I think, denied in the answer. Most certainly they have no right to call upon the defendant in this case to account for using a mark upon thread which they simply *vend* in the market, and in regard to which so far as the right to use a trade mark is concerned, they are imposing upon the public a trade mark not their own. The maker and vender is entitled to protection against a piracy of *his trade mark*, not the person who buys to sell. The public are led to believe when they see a trade mark upon any article of merchandize, that the person whose name is there used, is the only maker and vender of that article, and that it has certain qualities which distinguish it in value above all others of a like kind. But if any one who *sells* has the right to use the trade mark—as he certainly has unless the *manufacturer* interferes and objects—then I do not see the principle upon which the complainants here have any other or greater rights growing out of the use of this trade mark, than any other vender of the article ; and it will hardly be assumed that every *seller* of " Persian Thread " in Great Britain has the right to come here

and claim the powerful interposition of the Court of Chancery to protect him in using a mark to which he has no higher or juster claim than the mere *use* of it upon his spools of cotton thread.  The complainants, therefore, were bound to establish the allegations in the bill, that they were the *manufacturers* of the " Persian Thread," before they could ask relief.

Another ground assumed in the bill, is that the appellant has so exactly imitated the trade marks of the respondents, as to deceive and impose upon purchasers, who supposed they were buying the genuine " Persian Thread."   The appellant does not admit that any such deception has been committed upon a single purchaser.   He admits, to be sure, that his mark and the mark of the respondents are identical, but says that every individual in New York who purchased his thread, knew it to be his own manufacture ; and that he is informed and believes, that neither of the houses to whom he sold his " Persian Thread," ever sold, or offered to sell it, as the thread manufactured by the complainants ; but that they, in every instance, sold it as the thread manufactured by the appellant.   This allegation in the answer is also to be taken as true, if a final decree is to be made in this stage of the cause ; and it clearly shows that the appellant had never attempted to sell his thread in New York as the thread of the respondents.

The bill further alleges, that the thread manufactured and sold by the appellant is *inferior in quality* to the genuine " Persian Thread," and therefore the sale of the real article of the respondents is injured in the market.   The answer expressly denies this : and how the Chancellor can sustain the allegation that this is an immaterial fact, I am at a loss to discover.   The complainants expressly claim an account against the appellant for all the profits which he has made by the sale of his fraudulent imitation of their thread, thereby making it a very material question in settling the amount of damages which the respondents have sustained whether their thread is any better than the thread of the appellant.

Upon the whole case, I am satisfied that the decree is wrong, and should be reversed.   If the respondents can, by proper evidence, bring their case within the rule which forbids the piracy of a trade mark, they will be entitled to the aid of the Court of Chancery ; but upon this case as made by the bill and answer merely, I think they must fail.

Decree affirmed, with costs.