### H. MUELLER MFG. CO. v. A. Y. McDONALY & MORRISON MFG. CO.

(Circuit Court, N. D. Iowa, E. D. October 3, 1904.)

#### No. 236.

1. TRADE-MARKS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

A complainant is not entitled to a preliminary injunction to restrain the use by a defendant, who is financially responsible, of a trade-mark alleged to be in imitation of its own, where the priority of its right is doubtful, and there is little or no evidence of a fraudulent intent or purpose to mislead purchasers on the part of the defendant, and where, although complainant knew of the use of such trade-mark by defendant for three years before the suit was commenced, not more than four purchasers are shown to have been deceived thereby as to the origin of the goods.

In Equity. Suit to restrain unfair competition in trade. On motion for preliminary injunction.

Bond, Adams, Pickard & Jackson and M. M. Cady, for complainant.
Banning & Banning, Hurd, Lenehan & Kiesel, and Lyon & Lyon, for defendant.

REED, District Judge. Complainant and defendant are rival manufacturers of and dealers in plumbers' supplies and goods, including stopcocks and stop and waste cocks used in making connections with water service pipes. The bill alleges: That complainant has adopted as a trade-mark the letters "H. M.," arranged in connection with a shield-like figure, which it places upon the goods of its manufacture, including those of the class above mentioned, to indicate that they are of its manufacture, and that by its long use of such trade-mark it has acquired the exclusive right to the use thereof, and that the goods bearing such mark have come to be understood by the plumbers' trade and public in general as goods of a superior quality and of complainant's manufacture. That since the complainant has so acquired the exclusive right to the use of such trade-mark the defendant has fraudulently adopted as a trade-mark the letters "M. M.," arranged in connection with a diamond-shaped figure in imitation of complainant's said trade-mark, which it places upon the goods of its manufacture, of

¶ 1. See Trade-Marks and Trade-Names, vol. 46, Cent. Dig. § 108.

the kind above mentioned, and others, with the fraudulent intent and purpose of palming off the same (which are of inferior quality) upon the trade and public as goods of complainant's manufacture, to the great damage and injury of complainant and the public generally.

Goods of the complainant's and defendant's later manufacture (viz., stopcocks and stop and waste cocks), bearing their respective trade-marks, have been produced and offered in evidence, and it must be admitted that they bear a general resemblance to each other, and that an ordinary observer, unless upon close inspection, might not notice the difference in them, though a dealer would readily do so. In size they are substantially the same, but this is not of great importance, as goods of this character are generally made in standard sizes, to be fitted to standard sizes of pipes. The resemblance consists chiefly in the trade-mark of the respective parties, which appears upon the goods of their respective manufacture. The letters adopted by the complainant and defendant, respectively, are the initials of the principal words or names comprising the corporate name of each. Assuming, without deciding, that complainant had acquired the prior right to the use of its trade-mark, the defendant has the right to use its own name, or the initials thereof, as a part of its trade-mark to indicate its own goods, providing it does not do so in a manner and form to mislead the public and deceive buyers as to the identity of the goods, and lead them to believe that defendant's goods are those of complainant's manufacture; and this is the vital point of dispute between these parties. ·

The burden is upon the complainant to establish by clear and satisfactory proof the fraudulent intent and purpose of the defendant in arranging or using the initials of its own name in the form and manner it has, and placing the same in such form upon its own goods, to so mislead and deceive dealers in and consumers of such goods. There is no testimony which tends to show that defendant has ever sold or offered to sell any of its goods as those of the complainant's manufacture, or represented them as such. So far as it appears, it has always placed its own goods upon the market as its own manufacture, and openly sold them upon their merits as its own goods. The only evidence of a purpose on the part of defendant to manufacture an article in imitation of one of complainant's manufacture, and bearing a mark in similitude of that of complainant's trade-mark, is that of a witness who was formerly in the employ of defendant (and who was dismissed by it from its service shortly before this suit was commenced), who testifies that he was a draftsman, or pattern maker, in defendant's brass foundry, and that some four years ago Mr. Morrison, defendant's president, brought to him one of complainant's stopcocks, or stop and waste cocks, and directed him to prepare a pattern for a like article, as near like that of complainant's as he could, including complainant's trade-mark, and that in pursuance of such directions he prepared a pattern for such article, including the trade-mark of defendant, of which complainant now makes complaint; that this pattern was then adopted by the defendant company, and its goods of that class have since been made after such pattern. Mr. Morrison positively denies the testimony of this witness in this respect. He admits, however, that he did confer with the witness about the time stated by him, and with other em-

ployés and the officers of defendant, with reference to the making of new patterns for this class of goods, but that at such time they had samples of the goods of four or five different manufacturers, including complainant's, as well as catalogues and illustrations, and samples of different patterns within their reach, in order that the new articles proposed to be manufactured might be an improvement upon all, and not in imitation of complainant's or of any other manufacture. It also appears that defendant has used the diamond-shaped figure upon its brass and iron products and printed matter in one form or another since long prior to 1887, and that such figure, in the form now used by it, except as to the initial letters, has been upon its building in Dubuque since 1878.

The complainant contends, however, that defendant abandoned the use of such figure some time in the early 80's, and did not again use the same upon its brass goods until in the manufacture of those after the pattern made by the witness Schreiber in about 1900, and that it therefore lost the right to the use of such figure or symbol. This is disputed by the defendant, and it claims to have used the figure or symbol upon its brass and iron goods continuously, with some changes in form, since 1878. The conflict in the testimony is such that it would serve no useful purpose to review it further. It must suffice to say that complainant, prior to May, 1901, knew that defendant was manufacturing the goods, and placing thereon the trade-mark now complained of, and selling the same in the open market, and complainant requested defendant to desist from so doing. In response to such request the defendant on May 20, 1901, wrote complainant as follows:

"H. Mueller Mfg. Co., Decatur, Ill.—Gentlemen: We have been using the diamond, with some changes of form, lettering, and embellishments, on brass and iron goods, for many years, so long that it is, perhaps, past the memory of the present generation, and we will continue its use during our own pleasure and convenience.

"Yours truly,       A. Y. McDonaly Mfg. Co.,
"John Morrison."

Notwithstanding this, no suit was commenced till the filing of this bill, March 29, 1904, and up to the hearing upon this application complainant has been able to show only four instances where a consumer of the class of goods in question has purchased or used a stop, or stop and waste, cock of defendant's manufacture, believing or supposing it to be of complainant's make. Possibly there may be only one such instance; but in neither instance, if it be more than one, was the consumer so led to believe by any representations whatever of the defendant, unless it be so inferred from the defendant's trade-mark being upon such goods. The complainant meets this failure of proof by saying that this class of goods is generally used underground, and it is difficult to discover the instances in which consumers may have been misled. This, however, does not relieve complainant from making the requisite proof of the allegations of its bill to entitle it to the relief it asks. Such proof cannot be inferred because it may be difficult to obtain. Complainant must be, and apparently has been, diligent in securing proof of the allegations of its bill; and if, in three years, it has been able to discover that at most four stop, or stop and waste, cocks made by defendant have been used by consumers in the belief

that they were of complainant's manufacture, it must be apparent that the injury to complainant's trade and business is not of a serious nature.

The defendant has an extensive plant for the manufacture of such goods, and to stop such manufacture would entail upon it much greater damage than complainant, under its present proofs, can possibly suffer if defendant is not restrained. The defendant is abundantly able to respond to the utmost for all damages that complainant may sustain, if upon the final hearing it establishes its right to recover. Under such circumstances, if the alleged fraud of defendant is not clearly established, the better rule is to withhold the injunction until the final hearing. Sampson v. Seaver Co. (C. C.) 129 Fed. 761–771, and cases there cited.

If it were clearly proven that defendant was fraudulently invading complainant's rights, an injunction should issue restraining it from continuing to do so; but the proofs are not of that conclusive character that will warrant such an injunction against defendant, regardless of consequences to it. The complainant, having waited three years before moving to stop the alleged piracy of its trade-mark, cannot complain if the court, upon the meager showing made of injury to its business, shall require it to wait until the final hearing before determining whether or not it is entitled to an injunction.

The application for a preliminary injunction is denied.