## H. MUELLER MFG. CO. v. A. Y. McDONALY & MORRISON MFG. CO.

### (Circuit Court, N. D. Iowa, E. D.   October 14, 1908.)

#### No. 236.

1. TRADE-MARKS AND TRADE-NAMES (§ 65*)—INFRINGEMENT.

Complainant and defendant were each manufacturers of plumbers' supplies, and complainant adopted as a trade-mark the letters "H M" which it marked on its goods in a shield-shaped space with the figure of a diamond between the letters. Defendant used the letters "M M," which were the initials of the principal words in its corporate name, placed within a diamond-shaped space. It had used the diamond, both the word and figure, to denote its business and goods for many years before complainant's trade-mark was adopted. *Held*, that the similarity between the two marks was not such as to deceive purchasers using reasonable care or to charge defendant with infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 64; Dec. Dig. § 65.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 75*)—UNFAIR COMPETITION—IMITATION OF FORM OF MANUFACTURED ARTICLES.

A defendant manufacturing stop and waste cocks and similar plumbers' supplies which procured such articles of complainant's manufacture and purposely imitated them in size, shape, and appearance, thereby causing confusion in the trade and in fact deceiving purchasers, *held* chargeable with unfair competition which entitled the complainant to an injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*

Unfair competition, see notes to Scheurer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. On final hearing.

For opinion denying motion for preliminary injunction, see 132 Fed. 585.

The parties to this suit are the same as in No. 235, just decided, and it is to restrain an alleged infringement of a trade-mark, unfair competition in trade, and for an accounting. Defense, noninfringement and denial of the alleged unfair competition.

Bond, Adams, Pickard & Jackson and M. M. Cady, for complainant.

Thos. A. Banning, Banning & Banning, and Hurd, Lenehan & Kiesel, for defendant.

REED, District Judge. The complainant and defendant are rival manufacturers of, and dealers in, plumbers' goods. The controversy was before the court at a former date upon application by complainant for a preliminary injunction, which was denied. H. Mueller Mfg. Co. v. A. Y. McDonaly & Morrison Mfg. Co. (C. C.) 132 Fed. 585. It was there said:

"The letters adopted by the complainant and defendant as their respective trade-marks are the initials of the principal words or names comprising the corporate name of each. Assuming, without deciding, that complainant had acquired the prior right to the use of its trade-mark, the defendant has the right to use its own name or the initial letters thereof as a part of its trade-mark to indicate its own goods, providing it does not do so in a manner and form to mislead the public and deceive buyers as to the identity of the goods,

and lead them to believe that defendant's goods are those of complainant's manufacture. * * * The burden is upon complainant to establish by clear and satisfactory proof the fraudulent intent and purpose of the defendant in arranging or using the initials of its own name in the form and manner it has, and placing the same in such form upon its own goods to so mislead and deceive dealers in and consumers of such goods."

See, also, Brown Chemical Co. v. Meyer, 139 U. S. 544, 11 Sup. Ct. 625, 35 L. Ed. 247.

The correctness of the rule thus stated is not controverted by either party, but complainant maintains that the final proofs show that defendant does so use the initial letters of its own name in connection with the figure of a diamond and the shape or form and dress of its stopcocks, stop and waste cocks, and inverted key curb cocks manufactured by it as to simulate the complainant's goods of that class, and to thus fraudulently and unlawfully trespass upon its rights. The complainant caused its trade-mark to be registered in the Patent Office November 30, 1897, and its essential feature as there stated is, "the letters H and M arranged to make and form a part of the pattern of its fluid transmission appliances, particularly valves, cocks, pressure regulators, and tapping machines," and it is stated that complainant and its predecessors in trade have used this trade-mark since 1887. No reference is made to a figure of any kind as a part of the trade-mark. As used upon some of its goods of the above class the letters are arranged upon a figure designated in the evidence as "a shield" raised or embossed upon one side of the device, and upon its stop and waste cocks the nozzle or waste port of the shell is in the center of the figure with one of the letters on each side of the nozzle.

The defendant's trade-mark which it has adopted, and which it is alleged infringes complainant's, consists of the initial letters of the principal names comprising its corporate name arranged upon the figure of a diamond raised or embossed upon one side of its goods. These initial letters were first adopted and used by it in about 1900, and upon the stop and waste cocks manufactured by it since that time the nozzle or waste port of the shell is in the center of the raised figure with one of the initial letters arranged on each side thereof. The following cuts show substantially the trade-mark of the complainant, and that of the defendant as used by it since about 1900, and the style of letter in each as they appear upon the goods of their respective manufacture as above stated:

Complainant's Trade-Mark.          Defendant's Trade-Mark.

 

The defendant and its predecessor A. Y. McDonaly have used the figure of a diamond upon goods manufactured by them since 1855 or 1856, and upon the wall of defendant's shop or factory in Dubuque, built in 1877 or 1878, a sign was painted when the building was erected, with the word "Diamond" upon it, and a figure of a diamond in the form above shown at each end of the word. The sign still appears upon the building. The figure of a diamond and the name, or the initial letters thereof, have been continuously used by them ever since in one form or another upon goods manufactured by them, though they have not always been placed upon all of the goods. The placing of the initial letters of the names of the manufacturers of plumbers' goods upon the goods made by them is a custom or practice that far antedates the practice of the complainant or defendant to do so, and each but followed an old and well-known custom in placing the initial letters of its name upon the goods. In later years defendant has largely manufactured plumbers' goods for jobbers, and upon some of these the figure and defendant's name or the initial letters thereof have been omitted at the request of the jobbers and the jobber's name stamped upon the goods. It is contended by complainant that prior to about 1898 the defendant had abandoned the use in any form of the figure of a diamond as a part of its trade-mark, and that whatever right it had acquired before to so use the same it then lost, and that the use of it since that time is subsequent to the adoption by complainant of the so-called figure of a shield as a part of its trade-mark. Without reviewing the testimony bearing upon this question, it must suffice to say that it does not sustain complainant's contention, and that it conclusively shows that the continuous use by defendant and its predecessor in business of the figure of a diamond in one form or another as a part of their trade-marks began long prior to the adoption by complainant of its so-called figure of a shield as a part of its trade-mark, and that there has never been any intention by either of abandoning its use as such. Saxlehner v. Eisner Co., 179 U. S. 19–31, 21 Sup. Ct. 7, 45 L. Ed. 60.

Does the arrangement by defendant of the initial letters of its corporate name in connection with the figure of a diamond placed horizontally upon plumbers' goods made by it infringe the complainant's trade-mark? Remove the trade-mark of complainant and defendant from the article of manufacture upon which each is impressed and examine them separately, and it is quite apparent that no one exercising the slightest diligence in inspecting them could be deceived or led to believe that they were the same or that one was made in imitation of the other. A purchaser of goods is required to exercise reasonable care in examining them to ascertain that he gets what he wants, and a dealer is not required, in adopting a trade-mark or in dressing his goods, to select a mark, or so dress the goods that under no circumstances can a careless purchaser be misled or deceived. All that fair dealing requires is that the dealer shall adopt such a mark, or so dress his goods, that an ordinary person exercising reasonable care to guard against imposition will not be beguiled into purchasing an article that he does not intend to purchase. Coats v. Merrick Thread Co., 149 U. S. 572,

573, 13 Sup. Ct. 966, 37 L. Ed. 847. It is obvious that the difference between the complainant's trade-mark and that of the defendant is such that the latter does not infringe the former.

Irrespective, however, of any question of trade-mark, rival dealers have no right to dress their goods in simulation of those of their competitors, or by imitative devices mislead the purchasing public into buying their goods in the belief that they are those of their rivals in trade. Coats v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847. There is no doubt that the form and general appearance of the defendant's stop, stop and waste, and inverted key curb cocks, including the caps and handles as made by it since about 1898 or 1900, are identical with those of the complainant; and the impress of defendant's trade-mark upon any of such goods does not distinguish them from those of the complainant. While a dealer familiar with the goods of both, upon a close or critical examination of them when side by side, would readily distinguish one from the other, the ordinary purchaser, or dealer even, when examining them apart from each other and exercising due care to distinguish between them, would readily select one for the other. The proofs show, however, that aside from the cap and handle the outward shape or form of the body or shell of the stop and stop and waste cocks of both complainant and defendant were in common use and clearly described and shown in cuts published in catalogues of plumbers' goods as early as 1877, or 20 years before the complainant registered its trade-mark, and long before it began making its stop and stop and waste cocks in the shape or form that it now makes them. The defendant's exhibit of its 1883 stop, and stop and waste cocks, aside from the handles (they have no caps), the Farnan pattern of 1885, and the Ohio cock are identical in shape with the body or shell of complainant's goods of that class and of the goods of other manufacturers, as shown in the exhibits and published catalogues of such goods as early at least as 1877, and complainant has no more right to appropriate that shape or form of the body or shell of such goods to its exclusive use than has the defendant or any other manufacturer of such goods. But in about 1900, or not earlier than 1898, the defendant began making a cap and handle identical in size and shape with those of the complainant, and placed them upon the body or shell of stop, and stop and waste, cocks of the shape and size in common use generally by manufacturers of plumbers' goods long prior to 1894, and has since continued to make the handle and cap of its stop, and stop and waste cocks in that shape or form ever since; and with its trade-mark impressed upon the body of the cock they are not readily distinguishable from the complainant's goods of that class. In fact, the proofs show that a number of persons, since defendant began making its goods in that form, have purchased its goods of that class believing them to be of complainant's manufacture. The testimony is quite persuasive that defendant in adopting this form or shape and size of its cap and handle did so to imitate and simulate the cap and handle of the complainant. In so doing it wrongfully trespassed upon complainant's rights, and is guilty of unfair competition in trade.

It is urged on behalf of defendant that it has the right to use the essential form or shape and size of a cap and handle for its goods. Grant it; but the exact size, form, and outward appearance or dress of the cap and handle are not essential features of these devices. The outward form, and dress or appearance, of the articles are purely arbitrary and fanciful. The exterior of the cap may be square, hexagonal, or octagonal, and the shape of the handle square or of some other form that will readily distinguish it from that of the complainant, and yet each possess all the essential elements or features of a cap and handle suitable for the goods of that class and be readily distinguishable from another cap and handle performing the same function. The complainant began the manufacture of its inverted key curb cock with a T-shaped handle in about 1894. In 1900, or 1898 at the earliest, the defendant procured one of them and began making its goods of that class in exact imitation of the complainant's, even to the color of the handle and the size and location of an arrow on the barrel of the device, but impressed its trade-mark upon the body of the cock. This, however, fails to distinguish it from the complainant's. The proof is conclusive that defendant did this to simulate the complainant's goods of that class. Defendant, in so simulating the cap and handle of complainant's stop, and stop and waste, cocks, and its inverted key curb cock, creates confusion between its goods and those of complainant of those classes to the damage of the complainant, and it may be to the injury of the purchasing public.

The conclusion, therefore, is that, while the defendant may rightfully use the figure of a diamond, and the initial letters of the principal names comprising its corporate name, substantially as arranged by it as its trade-mark, and impress the same upon the goods of its manufacture, including the body or shell of its stop, and stop and waste, cocks, it may not make the cap and handle it places upon such goods in simulation of the complainant's cap and handle, nor its inverted key curb cock in simulation of that of the complainant, with or without the impress of its trade-mark thereon, and a decree may be prepared restraining it from so doing and for an accounting.

It is ordered accordingly.