## COATS *v.* MERRICK THREAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 261. Argued April 27, 28, 1893. — Decided May 10, 1893.

Irrespective of any question of trade-marks, rival manufacturers have no right, by imitative devices, to beguile the public into buying their wares under the impression that they are buying those of their rivals.

The proofs establish that there was no intention on the part of the appellees to impose their thread upon the public as that of the plaintiff in error, or to mislead the dealers who purchased of them.

When the letters patent to Hezekiah Conant, protecting "a new design for embossing the ends of sewing-thread spools" expired, the public became entitled to use them for the purpose for which the assignee of Conant used them.

THIS was a bill in equity by the firm of J. & P. Coats, of Paisley, Scotland, to enjoin the defendants, the Merrick Thread Company, a Massachusetts corporation, and Herbert F. Palmer, its managing agent in New York, from infringing plaintiffs' trade-mark, and unfairly competing with them, by simulating

certain labels and symbols used by the plaintiffs upon the ends of wooden spools upon which sewing thread is wound.

The bill set forth in substance that plaintiffs had, since 1830, been engaged in the manufacture and sale of sewing threads on spools, and since the year 1840 the thread made by them had been and still was sold largely in the United States; that since about the year 1869 said firm had also been engaged in the manufacture of thread at Pawtucket, in the State of Rhode Island; that their business was very large and valuable, and their thread was well known to the trade as "J. & P. Coats' thread;" that all the thread manufactured by plaintiffs, which is wound on spools of 200-yard lengths, had been and still was composed of six separate strands twisted together, known as "six-cord" thread, and was designated upon their labels and wrappers as "Best Six Cord." That about the year 1842, the name "J. & P. Coats," with the quantity reeled on each spool, and the words "Best Six Cord," with a designating number, were placed upon a circular black and gilt label upon the end of every spool, and had always been one of the designating trademarks of the plaintiffs in the United States; that in 1869 they adopted the idea of embossing upon the natural wood and upon the outer edge of the heads of the spools numerals corresponding with those upon the paper labels pasted upon the centre of said spool heads, the object of such embossing being to show the number of the thread in case the paper label showing such number should be defaced or removed, and also to give a distinctive appearance to the plaintiffs' spools, and to indicate the origin and manufacture of the thread. The bill further averred that on the 9th of February, 1875, plaintiffs registered as a trade-mark at the Patent Office the central label of paper, and the peripheral band of natural wood, embossed with an ornamental design of crossed lines and central stars, with intermediate spaces, in which were embossed numerals corresponding to those in the centre of the label.

The bill further charged the defendant, the Merrick Thread Company, with being the manufacturers of both the "three-cord" thread, a thread of inferior grade, and also of "six-

cord" thread on spools in length of 200 yards; that for the three-cord thread the defendants used paper labels, wholly unlike, in color or design, to any labels used by the plaintiffs, but that in selling in competition with the plaintiffs the six-cord thread, they used labels upon the spools made in colorable imitation of the plaintiffs', and intended as a counterfeit of their designs and trade-mark, the object being to so imitate the general appearance of plaintiffs' thread that the same may pass into the hands of tailors, illiterate men, and others buying at retail and using sewing thread, as the genuine thread of plaintiffs.

In their answer the defendants denied the material allegations of the bill, and that the marks, embossment and labels used by the Merrick Thread Company were a simulation or infringement upon the plaintiffs' labels and trade-marks, but, upon the contrary, averred that they had endeavored to mark their goods so that no one could mistake their origin, and that their labels were so different from those of the plaintiffs and other manufacturers that they were plainly distinguishable from them by ordinary purchasers. They further averred that the use of embossing the number of the spool thread on the wood of the spool head around the paper label was, on April 5, 1870, patented as a design to one Hezekiah Conant, which patent had long since expired, and alleged that since such expiration the defendants had the free right to use such design, including any paper label which was not in and by itself an infringement of any lawful trade-mark of the plaintiffs.

On a hearing in the court below upon pleadings and proofs the bill was dismissed, (36 Fed. Rep. 324,) on the ground that defendants were not shown to have made an unlawful use of the plaintiffs' labels. Plaintiffs thereupon appealed to this court.

*Mr. Frederic H. Betts* for appellants.

*Mr. W. C. Witter,* (with whom was *Mr. W. H. Kenyon* on the brief,) for appellees.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The gravamen of the plaintiffs' bill is contained in the allegation that the defendants have been guilty of an unlawful and unfair competition in business, in that they have been infringing the rights of plaintiffs in and to certain marks, symbols and labels, by selling in competition with the plaintiffs a spool thread of "six cords" put up on spools of 200 yards' length, which thread is not manufactured by these plaintiffs, but is put upon the market and sold among retailers and customers, as well in the city of New York as in other and distant parts of the United States, as and for the thread of the plaintiffs, by reason of the labels, marks, and devices upon the spools whereon the said thread is wound.

It will be observed in this connection that no complaint is made of the conduct of the defendants with respect to any other thread than that of six cords put up in spools of 200 yards in length, notwithstanding that both plaintiffs and defendants have been long engaged in the manufacture of thread of several different sizes and lengths. Nor is it alleged that defendants have used any other means of imposing their thread upon the public as that of the plaintiffs, except by the imitation of their device upon one end of the spool. The dissimilarity between the labels on the other end of the spool is so great that it is not and could not be claimed that any intent to imitate existed.

It is admitted, however, that six-cord spool cotton is the thread most largely used for domestic consumption, and, put up on spools of 200 yards' length, in numbers from 8 to 100, is best known and purchased by the great mass of consumers; and that it is as manufacturers of this description of thread that the plaintiffs are and have for a long time been known throughout the country.

The controversy between the two parties then is reduced to the single question whether, comparing the two designs upon the main or upper end of the spool, there is such resemblance as to indicate an intent on the part of defendants to put off

their thread upon the public as that of the plaintiffs, and thus to trade upon their reputation. There can be no question of the soundness of the plaintiffs' proposition that, irrespective of the technical question of trade-mark, the defendants have no right to dress their goods up in such manner as to deceive an intending purchaser, and induce him to believe he is buying those of the plaintiffs. Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their enclosing packages, in the extent of their advertising, and in the employment of agents, but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals. *Perry* v. *Truefitt*, 6 Beav. 66; *Croft* v. *Day*, 7 Beav. 84; *Lee* v. *Haley*, L. R. 5 Ch. 155; *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508; *Johnston* v. *Ewing*, 7 App. Cas. 219; *Thompson* v. *Montgomery*, 41 Ch. D. 35; *Taylor* v. *Carpenter*, 2 Sand. Ch. 603; *Amoskeag Mfg. Co.* v. *Spear*, 2 Sand. N. Y. 599; *McLean* v. *Fleming*, 96 U. S. 245; *Boardman* v. *Meriden Britannia Co.*, 35 Connecticut, 402; *Gilman* v. *Hunnewell*, 122 Mass. 139.

For the better understanding of the question in this case, the respective devices of the plaintiffs and defendants are here given in juxtaposition:

 

It will be seen that in both devices there is a paper label, circular in form, much smaller than the head of the spool, containing, in black letters upon a gilt ground, the name of the manufacturer, the number of the thread, and the words "Best Six Cord," arranged in circular form to correspond with the shape of the label. Around this label in each case is

a peripheral border of natural wood, having the number of the thread embossed upon such periphery. The differences are less conspicuous than the general resemblance between the two. At the same time they are such as could not fail to impress themselves upon a person who examined them with a view to ascertain who was the real manufacturer of the thread. Plaintiffs' label contains the words "J. & P. Coats, Best Six Cord" in a gilt band around the border, and in the centre the symbol "200 Yds." and the number of the thread. Defendants' label contains the words "Merrick Thread Co.," and the number of their thread in the gilt band upon the border, and in the centre the words "Best Six Cord," enclosing a star. The periphery of defendants' spool is also embossed with four stars, instead of the loops of the plaintiffs, as well as the number of the thread.

As bearing upon the question of fraudulent intent, the history of these labels is pertinent. Since 1830, plaintiffs have been engaged in the manufacture of thread at Paisley, Scotland, in the name of J. & P. Coats. About 1840, their thread was first put upon the market in this country, and for more than twenty-five years past they have been manufacturing thread at Pawtucket, Rhode Island, in the name of the Conant Thread Company. Prior to this time, six-cord thread was not made in this country, a kind of thread known as glacé, and composed of three cords, being the only thing made prior to 1865. At about the same time the manufacture of this thread was also begun by the Willimantic Linen Company, George A. Clark & Co. and the defendants. From the time plaintiffs' thread began to be exported to this country to the present time their spools have borne the black and gold label, represented above, and still in use. For the past thirty years they have been by far the largest manufacturers and dealers in spool thread in this country. On April 5, 1870, Mr. Conant, the treasurer of the company, obtained a design patent "for embossing the ends of sewing-thread spools," which was subsequently assigned to the plaintiffs, and which covered a "design for ornamenting the ends of the sewing-thread spools, which consists of a chain of loops, $aa$, within which loops is a

number expressive of the number of the thread wound on the spool, substantially as shown and described." The purpose of the design was stated to be "to preserve the number of the thread with which the spool is wound after the label has been destroyed by the act of setting the spool upon the spool-stand of a sewing-machine." This patent expired in 1877. In 1875, (February 9,) plaintiffs registered a trade-mark consisting of " a central label of paper formed of concentric circles of black on a light ground containing on one of the light bands the words ' J. & P. Coats,' ' Best Six Cord,' and on the central black circle the figures and letters ' 200 Yds.,' and a numeral, . . . On the end of the spool, surrounding the label, is a peripheral band of the natural wood embossed with an ornamental design of crossed lines and central stars, with intermediate spaces, in which are embossed numerals corresponding to that on the centre of the label." The essential features of this trade-mark were declared to be " the label of concentric rings, having in the central spot a numeral, and an embossed peripheral border of the natural wood, including among its ornamental designs the same numeral as that displayed in the centre." This trade-mark has been in use by the plaintiffs from its date to the present time.

Upon the part of the defendants, it was shown that the Merrick Thread Company was organized under that name in 1865, soon after which it began and has ever since continued to make at its mills at Holyoke, Mass., 200-yard spools of six-cord thread, and to designate it on one head of the spool with a black and gold label of concentric rings bearing thereon the name, size, and quality of the thread, following in this particular the method of designating such thread which has been in vogue for more than fifty years, and without which it is claimed to be impossible to market such thread. About the same time, plaintiffs began to manufacture at Pawtucket, Rhode Island, the same article, and to designate it with the usual black and gold label — the same label they had used abroad upon a thread marketed here. For a dozen years or more the defendants continued this method of designating their thread without objection from the plaintiffs, but, after the expiration of plain-

tiffs' design patent, and in 1878, defendants embossed this numerical design, somewhat changed, upon their own spool heads, in connection with their own label. Whereupon plaintiffs notified them of their claim to an exclusive use of this combination, and some time thereafter brought this suit, claiming that defendants were guilty of unfair competition in business.

In disproof of any intention upon their part to impose their thread upon the public as that of the plaintiffs, defendants show that their thread was expressly advertised through the country as that of the "Merrick Thread Company," or the "Star Thread," and also put in evidence the cabinets furnished by the defendants for the exhibition of their threads in the retail shops, upon which is conspicuously labelled in large gilt letters the words "Merrick's Six Cord Spool Cotton," as well as their advertising or show cards, of which several specimens were shown, which were also lettered conspicuously in the same manner. Their wrappers and boxes are also so clearly distinguishable from those of the plaintiffs that it would be hardly possible to mistake one for the other. We think the defendants have clearly disproved any intention on their part to mislead the dealers who purchase of them. Indeed, such dealers could not possibly fail to know what they were buying, and the fraud, if any, was practised on the buyer of a single or a small number of spools, who might be induced to purchase the thread of the defendants for that of the plaintiffs.

In answer to the question whether the defendants have been guilty of a fraudulent imitation of the plaintiffs' marks and symbols, it is also pertinent to consider to what extent the black and gold label, which constitutes an important feature of this device, had been used by others with their consent, and to what extent it has become recognized as a means of identifying the best six-cord thread. If the plaintiffs had been the first and only ones to make use of this label, another person seizing upon and appropriating a black and gold label of the same size, and for the same purpose, might be held guilty of infringement, when, if the plaintiffs had no exclusive right thereto, and defendants had done only what others had

done before, they would not be so considered. In this connection it appears that the Willimantic Linen Company, which now seems to be in combination with the plaintiffs, began the use of the black and gold label of concentric rings as early as 1865, as a designation of six-cord 200-yard spool thread, and that other firms, both before and after that, made use of similar labels for the same purpose, including those of Orrs & McNaught, (from 1855 to 1870,) George A. Clark, J. & J. Clark, the Williston Mills, the Semples, the firm of Kerr & Co., the Hadley Co., E. Ashworth & Sons, and others at different times from 1850 to the present, who have made use of black and gold labels bearing nearly, though, it must be admitted, not quite as close, a resemblance to plaintiffs as do those of defendants. There was also evidence that as early as 1821 the thread of John Clark, Jr., or of J. & J. Clark, was imported into this country with labels in black and gold in concentric rings, with the makers' name upon them. Indeed, the testimony indicates that the black and gold labels have become so identified with this quality of thread by immemorial usage that it would be impossible to introduce or sell a new manufacture of such thread without making use of that character of label, and that a six-cord thread attempted to be put upon the market with a label of any other general color would be suspected of being a three-cord or basting cotton, and practically unsalable as six-cord. In fact, the defendants produced testimony tending to show that in two instances attempts have been made to put a six-cord thread upon the market without a black and gold label, but in one case at least the project had to be abandoned, and the manufacturer was obliged to return to the usual black and gold label. In addition to this, it appeared that the Merrick Thread Company began to make and put upon the market 200-yard six-cord thread in the early part of 1868, and made use of a black and gold label, bearing the name of the American Thread Company, which in 1877 was changed to the Merrick Thread Company, the word "American" being placed upon the other end of the spool to preserve the identity of the thread.

Regarding it, then, as established that other manufacturers

had by long practice, and with the acquiescence of the plaintiffs, acquired the right to make use of the black and gold label, it is difficult to see how the defendants could have advertised more clearly the fact that it was their own thread, or better accentuated the distinction between its own and Coats' than it did by the alleged infringing label. Of course, a person seeking to distinguish his label from that of another labors under certain disadvantages in the fact that the shape of the head almost necessarily requires the label to be round, and the size of the spool demands that it shall be small. In the defendants' spool not only did the words "Merrick Thread. Co." clearly and distinctly appear, but the number of the thread is placed conspicuously in the margin, and the centre is ornamented with a star, which does not appear upon the plaintiffs'. As already observed, the label upon the reverse end of the spool is wholly different from that of the plaintiffs. It is clear that neither the words "Best Six Cord," nor "200 Yds." are capable of exclusive appropriation, as they are descriptive, and indicative only of quality and length.

The propriety of the employment of the embossed periphery depends upon somewhat different considerations. In 1870, Hezekiah Conant, of Pawtucket, Rhode Island, the manager of plaintiffs' American manufactory, took out the design patent for this embossed periphery. This patent seems to have been respected until 1877, when it expired, shortly after which the defendants introduced upon the periphery of their spool corresponding numerals, but with stars substituted for plaintiffs' loops. Defendants were guilty of no wrong to the plaintiffs in making use of corresponding designs for their own spool heads after the expiration of plaintiffs' patent. There was no attempt to imitate the peculiar chain or loop characteristic of this design; but the embossed numerals were made use of for the same purpose for which they had been originally designed, namely, to preserve the number of the thread when the label became defaced, or lost, or destroyed by the use of the spool in the sewing machine. Indeed, the idea of stamping the numeral upon the periphery of the spool does

not seem to have been original with Conant, but appears to have been used by the defendants as early as 1867.

However this may be, plaintiffs' right to the use of the embossed periphery expired with their patent, and the public had the same right to make use of it as if it never had been patented. Without deciding whether if the embossed periphery had contained a word which was capable of being appropriated as a trade-mark, defendants could have appropriated the same upon the expiration of their patent, it is clear that no such monopoly could be claimed of mere numerals, used descriptively, and therefore not capable of exclusive appropriation because they represent the number of the thread, and are, therefore, of value as information to the public. *Amoskeag Mfg. Co.* v. *Trainer*, 101 U. S. 51. Clearly the plaintiffs cannot, as patentees, claim a monopoly of these numerals beyond the life of the patent, and it is equally clear that, where used for the purpose of imparting information, they are not susceptible of exclusive appropriation as a trade-mark, but are the common property of all mankind. The patent being, not simply for the embossed number, but for embossing the same upon the periphery of the spool head, defendants were entitled, upon the expiration of such patent, to use them for a like purpose. Neither was there anything misleading to the public in such use of them, as the testimony is clear and uncontradicted that thread is bought and sold not by its distinctive marks, but by the name of the maker.

Plaintiffs, however, claim that, being the first to use the combination of a black and gold label with an embossed periphery, they should be protected against any such imitation by others as would mislead any ordinary purchaser of thread in small quantities. A large number of witnesses were sworn upon this subject, whose testimony tended to show that they had either purchased themselves or seen others purchase defendants' thread, supposing it to be Coats'. This testimony was not, however, wholly satisfactory, and threw but little light upon the controversy.

There is no doubt a general resemblance between the heads of all spools containing a black and gold label which might

induce a careless purchaser to accept one for the other. Defendants, however, were not bound to any such degree of care as would prevent this. Having, as we have already held,. the right to use the black and gold label, and the periphery embossed with the number of the thread, they were only bound to take such care as the use of such devices, and the limited space in which they were used, would allow. In short,. they could do little more than place their own name conspicuously upon the label, to rearrange the number by placing it in the border instead of the centre of the label, and to omit. loops of the plaintiffs' periphery, and substitute their own star between the numerals. Having done this, we think they are: relieved from further responsibility. If the purchaser of such thread desires a particular make he should either call for, such, in which case the dealer, if he put off on him a different. make, would be guilty of fraud, for which the defendants would not be responsible, or should examine himself the lettering upon the spools. He is chargeable with knowledge of the fact, that any manufacturer of six-cord thread has a right to use a, black and gold label, and is bound to examine such label with sufficient care to ascertain the name of the manufacturer. Indeed, the intent to imitate plaintiffs' spool heads, if any such intent existed, is manifest rather in the label than in the periphery, but plaintiffs having submitted to this without protest. for twelve years, have waived their right to relief upon this ground. *McLaughlin* v. *People's Railway Co.*, 21 Fed. Rep. 574; *Ladd* v. *Cameron*, 25 Fed. Rep. 37; *Green* v. *French*, 4 Bann. & Ard. 169; 3 Rob. on Pats. § 1194. Having already held that defendants had a right to make use of the embossed numeral in the periphery, their union of the two devices: upon the same spool head, both being originally designed to be used in conjunction, cannot be made the basis of a suit.

Upon the whole, we think the plaintiffs have failed to prove a case of unfair competition, or any illegal attempt of the defendants to impose their thread upon the public as that of the plaintiffs; that witn the right to use the black and gold label as other manufacturers have and continue to use it, and with the same right to use the embossed numerals which the plain-

tiffs have, we think they have taken all the precautions which they were bound to take to prevent a fraudulent imposition of their thread upon the public, and that the decree of the court below dismissing the bill should, therefore, be

*Affirmed.*