GERSON v. IOWA PEARL BUTTON CO., Inc.

(District Court, S. D. New York. June 18, 1918.)

TRADE MARKS AND TRADE-NAMES ⬡95(2)—UNFAIR COMPETITION—PRELIMI-
NARY INJUNCTION.

Where plaintiff, an individual dealer, in accordance with the New York statute filed a certificate showing his adoption of the name "Iowa Button Company" as a trade-name, and defendant, which was later incorporated under the laws of Iowa, adopted the same in ignorance of plaintiff's action, *held* that, as buttons from fresh-water shells are known to the trade as "Iowa pearl buttons," and neither party was entitled to the exclusive use of the name, plaintiff's motion for a preliminary injunction, restraining defendant, which had begun to do business in New York, from using such name, will be denied.

In Equity. Suit by Stanley Gerson against the Iowa Pearl Button Company Incorporated. On motion for preliminary injunction. Motion denied.

Emanuel S. Cahn, of New York City, for the motion.
Joseph A. Arnold, of New York City, opposed.

MAYER, District Judge. The application is for a preliminary injunction to restrain defendant from using the words "Iowa Pearl Button Company" within the state of New York, or, in any event, within the county of New York.

Plaintiff has used the name since December 2, 1913, having filed a certificate in the office of the New York county clerk in accordance with the statute permitting individuals, as distinguished from corporations, to use the designation of "Company" after compliance with statutory requirements and procedure.

Defendant corporation was organized under the laws of Iowa in 1916, its place of business being in Muscatine, in that state, and, on January 5, 1917, it obtained the usual certificate of authority to do business in the state of New York.

Bishop, the president of defendant, states that after a careful investigation, to ascertain whether the name "Iowa Pearl Button Company" had been used in the United States, he was unable to find that the name was in use. There is no reason to doubt this statement, as it is quite likely that such a search would be confined to inquiry of state secretaries or like state officials, rather than of innumerable county clerks or similar officials. According to Bishop, neither he nor any one else connected with defendant knew of the existence of Gerson's trade-name.

Gerson is a dealer, and trades, not only in Iowa pearl buttons, but also in other kinds of buttons. Defendant is a large manufacturer

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of "Iowa," or fresh-water pearl buttons. Nothing in the way of wrongdoing, nor deception, nor unfair trade methods, is shown against defendant. Plaintiff's sole reliance is on the liability to deception and confusion which is likely to result from the use by defendant of a name substantially identical with that of plaintiff's trade-name.

It is unnecessary to analyze at length the cases which deal with this frequently litigated subject, for the motion may be disposed of on the authority of Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535.

It seems—rather interestingly—that "Iowa pearl button" is a well-known product, which has grown to have a name as generic as "cotton" or "grain," to use the illustration of the Goodyear Case, supra. In other words, "Iowa pearl button" means a button made out of fresh-water shells. According to defendant, about 25 years ago the manufacture of pearl buttons out of fresh-water shells originated in Muscatine, Iowa. Up to that time there had never been any pearl buttons made out of fresh-water shells, in the United States or elsewhere. Machines for finishing pearl buttons made out of these shells were invented and developed at Muscatine, where the industry started, and the industry has grown large, and especially at Muscatine and other towns in Iowa. Iowa pearl buttons are known exclusively in the button trade as the equivalent of sweet-water buttons made from shells which are found in streams adjacent to Iowa, and many of the prominent firms manufacturing fresh-water pearl buttons are located in Iowa.

Under the heading "Button," it is stated in the Encyclopedia Britannica (volume IV, page 891):

"Pearl buttons were made (in the United States) on a small scale in 1855, but their manufacture received an enormous impetus in the last decade of the nineteenth century, when J. F. Boepple began, at Muscatine, Iowa, to utilize the unio or 'niggerhead' shells found along the Mississippi. By 1905 the annual output of these 'fresh-water pearl' buttons had reached 11,405,723 gross, worth $3,359,167, or 36.6 per cent. of the total value of the buttons produced in the United States. * * * (See U. S. A. Census Reports 1900, Manufacturers, part iii, pp. 315-327)."

Muscatine, Iowa, is mentioned in volume XIX of the same work (page 44) as:

"The center of a pearl-button industry introduced in 1891 by J. F. Boepple, a German; the buttons being made from the shells of the fresh-water mussel found in the neighborhood. * * *"

From the foregoing it is plain that neither plaintiff nor defendant is entitled to the exclusive use of the name "Iowa Pearl Button," nor, under the Goodyear Case, supra, can such use be acquired by adding the word "Company."

In any event, whether this conclusion is right or not, a preliminary injunction should not be granted. The cause can be tried early in the fall, and, meanwhile, an injunction might do great injury to defendant, if improvidently granted; whereas, there is no showing of any real injury to plaintiff at this time, but only a possible injury. Defendant has had the certificate to do business in this state under

the name complained of for over a year, and this motion was only recently made, and the controversy may be safely left for determination upon the trial of the suit.

Motion denied.