DWIGHT LYDELL CHAPTER OF IZAAK WALTON LEAGUE OF AMERICA, INC., *v.* LOEKS.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—MOOT QUESTIONS—STIPULATION.

   Issues involving city became moot where litigants, concerned with the holding of an exhibition in municipally-owned building during year 1950, by stipulation dismissed the case as to the city before the show was held.

2. CONTRACTS—TERMS—DAMAGES.

   Cross-plaintiff, a promoter, failed to show he was damaged by reason of fact that city made lease with plaintiff corporation for use of municipally-owned auditorium, notwithstanding cross-plaintiff had made reservation for use of the auditorium, where no binding contract had been made with city by reason of the fact that no agreement had been reached as to the amount of space to be used or the price to be paid therefor.

3. TRADE-MARKS AND TRADE-NAMES—SPORTS SHOW.

   The term "sports show" is a generic term that can be used by anyone who is in that type of business.

4. SAME—GEOGRAPHICAL DESCRIPTION.

   "West Michigan" is a geographical description in which no rights can be acquired.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error, § 824.
[2] 12 Am Jur, Contracts, §§ 69, 70.
[3-6] Generally as to assumed names, see 38 Am Jur, Name, § 11 *et seq.*
[3-6] Generally as to generic terms as trade names, see 52 Am Jur, Trademarks, Tradenames, and Trade Practices, § 55.
[6] 3 Am Jur, Appeal and Error, § 821.
[7] 52 Am Jur, Tender, § 45.
[8] 3 Am Jur, Appeal and Error, § 823.
[9] 14 Am Jur, Costs, § 98.

5. SAME—NAME FOR EXHIBITION—TERMINATION OF CONTRACT WITH PROMOTER—RESIDUAL RIGHTS.

Use of name "West Michigan Sport Show, sponsored by the Izaak Walton League, promoted by Jack Loeks" originated by defendant promoter in conjunction with member of a voluntary nonprofit association, organized for preservation of natural resources, prevention of stream pollution, conservation of fish and game and other philanthropic and educational purposes, became the property of each party to contract between promoter and the association upon its termination to the extent either desired to use it, except that the association or its successor corporation could not use the promoter's name, hence the corporation was within its residual rights in using such part of the name as it could lawfully use.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ASSUMED NAME.

The effect of filing assumed name certificates upon residual rights upon termination of contract between promoter and exhibition's sponsoring group is not determined, where the group stated it no longer cared to use the name in both its brief and oral argument before the Supreme Court.

7. SAME—DEPOSIT IN COURT—INDEMNITY BOND.

Money paid into court by promoter, which he admitted was owing to a voluntary nonprofit association, predecessor of plaintiff nonprofit corporation with almost identical name, is ordered paid to latter upon its filing a bond to indemnify him in case he has to pay it twice, where he claims plaintiff corporation was improperly formed and the assignment of the fund to it was irregular and his claim of right to set off against the corporation is not substantiated.

8. SAME—QUESTIONS REVIEWABLE—INCORPORATION OF AN ASSOCIATION—ASSIGNMENT—PRINCIPAL AND AGENT.

Alleged irregularities in formation of nonprofit corporation as successor to a voluntary nonprofit association or defendant promoter's right to attack the assignment of a fund from the association to the corporation and whether relationship of principal and agent existed between the association and the promoter, are not discussed in view of disposition of the case rendering such unnecessary.

9. COSTS—MODIFICATION OF DECREE.

No costs are allowed on appeal in suit for declaration of residual rights between parties to contract and the successor of one of them, where decree is modified on appeal.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 3, 1950. (Docket No. 5, Calendar No. 44,804.) Decided January 8, 1951.

Bill by Dwight Lydell Chapter of Izaak Walton League of America, Inc., successor to Dwight Lydell Chapter of Izaak Walton League of America, against John D. Loeks and City of Grand Rapids for declaration of rights relating to use of assumed name and of space in the civic auditorium. Cross bill by defendant Loeks against plaintiff and others for mandatory injunction requiring discontinuance of use of assumed name and other relief.

Assumpsit by plaintiff against defendant Loeks for money due under contract.

Judgment and decree for plaintiff. Defendant Loeks appeals. Case dismissed as to defendant City of Grand Rapids. Modified and affirmed.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiff.

*Allaben, Wiarda, Hayes & Hewitt,* for defendant Loeks.

Butzel, J. The Dwight Lydell Chapter of the Izaak Walton League of America, herein designated as the chapter, a voluntary nonprofit association, was the Grand Rapids branch of the Izaak Walton League of America, a national organization. Its purposes included the preservation of natural resources, prevention of stream pollution, conservation of fish and game, and various forms of philanthropy and education.

Prior to the war, it held several sports shows, each lasting a number of days, at the civic auditorium of Grand Rapids. It held no shows during the

war years, but in 1946 made plans for one the following year, and obtained a tentative reservation of space in the civic auditorium for several days in April, 1947. It had been negotiating with a professional promoter, but the negotiations had fallen through. The Junior Chamber of Commerce of Grand Rapids had also obtained a tentative reservation of the civic auditorium space for a sports show which it expected to conduct under the management of John D. Loeks, a competent promoter and manager of exhibitions and other forms of entertainment. The Junior Chamber of Commerce withdrew in favor of the chapter, which in turn availed itself of Mr. Loeks' services.

A contract was entered into between the chapter and Loeks in which Loeks was designated as the promoter and the chapter as the sponsor. It provided that the chapter was not to assume any financial obligation in the conduct of the show; that the promoter was to do the work, indemnify the sponsor against all losses and furnish a $3,000 indemnity bond. The sponsor's name was to appear prominently in all publicity. The profits were to be divided: 65 per cent. to the promoter and 35 per cent. to the sponsor. The sponsor agreed to lend its cooperation and support to make the enterprise successful. The contract further provided for automatic annual renewals unless either party gave the other notice of termination on or before the first of October of the year of the show. Neither party had a right to assign any rights under the contract without the written consent of the other. Contracts substantially the same were entered into in 1948 and 1949. All 3 shows were profitable, the net profit for 1949 amounting to $10,351.91.

On May 11, 1949, the chapter notified Loeks in writing that it terminated the contract. There had been dissatisfaction with Loeks prior to the 1949

show, and according to the testimony, Loeks ran the 1949 show like a carnival, with space rented for the exhibition of hair curlers, corn cures, et cetera. The principal grievance of the chapter, however, arose because without any previous notice to the public or the chapter Loeks made a surcharge of 25 cents for reserved seats in a large section of the auditorium on the last night of the show. The chapter considered this an act of bad faith toward the public.

During the early part of 1949, for prudent reasons wholly foreign to the issues in the instant suit, the chapter with the consent of the national organization became a nonprofit corporation. The corporation took the same name as the chapter, but the bill of complaint indicates that it added the abbreviation "Inc." after the name. We refer to it as the corporation.

On April 12, 1949, shortly after the end of the sports show for that year, the corporation filed an assumed name certificate, stating that it was doing business under the name of "West Michigan Sport Show." Shortly thereafter, Loeks filed a similar certificate as "Western Michigan's Sportsmen's Show."

Prior to the 1949 show, Loeks had reserved for the "Izaak Walton Sports Show, J. D. Loeks, manager," the use of the civic auditorium for a week in 1950 in contemplation of the continuance of the contract. Reservations of this type were usually honored after differences as to price and space were settled.

On July 13, 1949, the corporation, as successor to the chapter, filed a bill of complaint against John D. Loeks and the city of Grand Rapids, as defendants. It set forth the history of the previous sports shows, and the contract with the defendant Loeks. It alleged that Loeks had made a reservation in the

civic auditorium for a sports show to be held from March 27 to April 1, 1950, and that such reservation was made for and in behalf of the plaintiff with its consent; that no formal lease had been made; that it was advised that the city of Grand Rapids was willing that the plaintiff have the space and would make a formal agreement, but that the city did not want to be involved in any litigation.

It further alleged that Loeks had made certain threats and that the plaintiff could not safely proceed to make contracts, and prepare for the show for fear that Loeks would carry out his threats and attempt to secure an injunction to prevent the plaintiff from using the name "West Michigan Sport Show," or from occupying the space in the auditorium. The court was asked for a declaration of rights so that the plaintiff could proceed with its plans. Loeks filed an answer and cross bill. He denied the corporation's right to the relief prayed for, claimed that he was the owner of the name "West Michigan Sport Show," and was entitled to the space reserved in the auditorium for the 1950 show. Loeks in his cross bill also made the Dwight Lydell Chapter of the Izaak Walton League of America, the association, a party defendant, so that all parties are before the court.

On August 1, 1949, the corporation began an action at law to recover a balance of $2,556.57 claimed to be due from the 1949 show. The law case was consolidated with the chancery suit. The court rendered a judgment for plaintiff in the amount of $2,556.57 with costs to be taxed, and ordered that the money, which had been garnisheed in the law action, be desposited to await the outcome of the chancery suit. Such deposit was consented to by Loeks.

Upon hearing of all the issues involved, the court held that the relationship between the chapter and

Loeks was that of principal and agent; that the plaintiff as successor to the chapter was the sole and exclusive owner of the name "West Michigan Sport Show." The cross bill of Loeks was dismissed. The court further held that the city of Grand Rapids might enter into a lease with either party or with anyone else.

The case was dismissed as to the city of Grand Rapids by stipulation on April 20, 1950. The city leased the auditorium to the corporation after the decree of the trial court and the corporation held a 1950 sports show while this appeal was pending. Since there was no longer any question as to the use of the space for the 1950 show, any issue involving the city had become moot.

Loeks has raised 3 questions on appeal: To what extent was Loeks damaged by the corporation's use of the auditorium and of the name "West Michigan Sport Show?" Who is entitled to the future use of the name "West Michigan Sport Show?" What is to be the disposition of the $2,556.57 deposited in the trial court?

When Loeks reserved the dates for the 1950 show at the civic auditorum there was no agreement as to the amount of space to be used, or the price to be paid. Thus 2 of the elements essential to a legally enforceable obligation were missing. The city could have contracted or refused to contract with either party. Neither the corporation nor Loeks had the right to a lease.

Loeks contends that he was entitled to the name "West Michigan Sport Show" as a residual right under the contract, and that the appropriation of the name by the corporation for its 1950 show was an unauthorized use thereof. The contract made no provision as to residual rights. The advertising matter prepared while Loeks was the promoter or manager contained the following legend: "West

Michigan Sport Show, sponsored by the Izaak Walton League, promoted by Jack Loeks." The latter part of this legend was in large type, but smaller than the first part. The important parts of the legend were the names of the 2 parties. Advertisers and patrons could be sure that the show would be on a higher plane than a carnival because of the sponsorship of the chapter, and they would be assured of a competently managed and entertaining show because of Loeks' reputation. The term "sports show" like "hardware store," "auto show," or "funeral home" is a generic term that can be used by anyone who is in that type of business. West Michigan is a geographical description in which no rights can be acquired. *Sincone* v. *Macciocchi*, 263 Mich 292. The name was originated by Loeks in conjunction with the chapter member in charge of the show, and upon the termination of the contract became the property of each party to the extent it, or he, wanted to use it and insofar as rights therein could be gained. On the termination of the contract, neither the chapter nor its successor could use Loek's name, a significant portion of the original title, but could use any other part of it. The corporation was within its rights in conducting the 1950 sports show.

We are not deciding, however, that in an action against a third person, trading on the good will of the enterprise, there could be no relief. The question here is one of residual contract rights, not unfair competition.

Both parties filed assumed name certificates, as hereinbefore noted. In both its brief and oral argument before this Court, the appellee stated that it did not care to use the name any longer. Under these circumstances, we need not discuss the effect of the filing of the assumed name certificates by the respective parties.

Loeks contends that the $2,556.57, now held by the trial court, should not be turned over to the plaintiff corporation for the contract expressly forbade assignment of any of the rights to it by the parties, because the corporation was improperly formed and not a proper successor to the chapter, because the assignment of its assets by the chapter to the corporation was irregular, and because of his claim of a setoff for damages arising from the alleged unlawful use of the name and the hall by the corporation. Loeks admits that he owes the money to the chapter. He objects to the trial court's decree in favor of the corporation on the grounds that if the corporation were improperly formed, or if the transfer of assets to the corporation were irregular, he might be made to pay the claim twice. Loeks is entitled to freedom from future claims in this matter, and the corporation's attorneys have indicated that they are willing to file a bond to idemnify Loeks against that contingency. Loeks is not entitled to any damages as claimed.

It becomes unnecessary to discuss the alleged irregularities in the formation of the corporation, or Loeks' right to attack the assignment from the chapter to the corporation, whether the relationship of principal and agent existed between the chapter and Loeks, or, in view of our holding, other questions raised on appeal not herein referred to.

The cause is remanded for disposition of the money deposited in the trial court. Upon filing of a bond to be approved by the trial court indemnifying Loeks against any further claim for the money in dispute, it will be paid to the corporation.

The decree of the trial court, as modified, is affirmed. Neither party will recover costs in this Court.

Reid, C. J., and Boyles, North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.