The WYOMING NATIONAL BANK OF CASPER, a National Banking Association, and First National Bank of Casper, a National Banking Association, Appellants (Plaintiffs below),

v.

SECURITY BANK & TRUST CO., a Wyoming Chartered Banking Corporation, Appellee (Defendant below).

No. 4718.

Supreme Court of Wyoming.

Dec. 21, 1977.

Houston G. Williams, Werhli & Williams, Casper, signed the brief and appeared in oral argument on behalf of appellant, First Nat. Bank of Casper.

William H. Brown, Brown, Drew, Apostolos, Barton & Massey, Casper, signed the brief and appeared in oral argument on behalf of appellant, The Wyoming Nat. Bank of Casper.

Stanley K. Hathaway, Hathaway, Speight & Kunz, Cheyenne, signed the brief and appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., McCLINTOCK, RAPER and THOMAS, JJ., and ARMSTRONG, Retired District Judge.

RAPER, Justice.

This case centers around a name change initiated by defendant-appellee, Security Bank & Trust Co. of Casper, Wyoming. Security Bank & Trust Co. is one of 17 members of Wyoming Bancorporation and, as a member of that organization, it has planned to change its name to "First Wyoming Bank-Casper", as in the case of all other member banks throughout the State of Wyoming for conformity to a uniform standard, "First Wyoming Bank-(name of city in which located)". After defendant notified plaintiffs-appellants of the name change, the First National Bank of Casper, a plaintiff-appellant, and the Wyoming National Bank of Casper, a plaintiff-appellant, obtained a temporary restraining order and sought to permanently enjoin defendant, Security Bank & Trust, from using its new name. The basis of the complaint by First National Bank of Casper, hereinafter to be referred to as "First National", and Wyoming National Bank of Casper, hereinafter to be referred to as "Wyoming National", was that they had established trade names in "First" and "Wyoming" and the use of the name "First Wyoming Bank-Casper" will result in confusion and deception. The district court denied permanent injunctive relief. We will affirm.

Presented on appeal are a number of questions concerning the factors required to be established before the courts will protect a trade name. Unless a trade name is confusing and deceptive on its face, those seeking such protection must take the burden of proving that they have given to their trade names a secondary meaning through years of usage and if in this case defendant was to be allowed to use its new name, the public would be confused by its similarity to the trade names of plaintiffs. This confusion, in turn, must be such as to warrant issuance of an injunction. That is, potential customers must be confused or deceived into patronizing one bank in the mistaken belief that they are dealing with another

bank.[1] The advantages of advertising, good reputation, and extensive use would be lost to a competitor if a name is confusingly similar. It is conceded that the banks involved in this lawsuit are competitors, each engaged in the identical enterprise of banking.

Extensive evidence was presented to the trial court by both appellants. This evidence revealed that First National has been in business in Casper since 1889, and it was the first nationally-chartered bank in Casper. That bank's present name was adopted in 1957. Wyoming National was established in Casper in 1914 and has used its present name since that time. Both plaintiffs have offered banking services from their respective bank premises in Casper. Their business has been primarily with the public of Natrona County, but also extends outside of that county. Plaintiffs' business premises are located in downtown Casper and are in close proximity to each other. Defendant's bank is not a new bank, having been established in 1960, and is state-chartered rather than nationally-chartered as are both plaintiff's banks. Defendant's location is only two blocks away from Wyoming National and First National.

Both plaintiffs have invested large sums of money in advertising, and much of the advertising emphasizes "First" and "Wyoming" in plaintiffs' names, respectively. However, it appears that the most used shortened names were "First National" and "Wyoming National". Testimony was introduced as to the programs of these banks to become known to the general public by names relating to their history of service in the area. Such is said to be a common tactic used to deal with increasing competition in the banking business. According to the evidence, advertising tactics appear to be of importance to businesses in the Casper area, due to its transient population and mineral exploration. Other banks in the city, according to plaintiffs' evidence, also have become known by abbreviated names, such as "Hilltop Bank", "Western Bank" and sometimes just the first of those names.

In addition to the testimony introduced, plaintiffs entered into evidence a survey of Casper citizens. This survey was intended to demonstrate the confusion which would result from the changing of defendant's name to First Wyoming Bank-Casper.

Defendant thoroughly cross-examined all of plaintiffs' witnesses and demonstrated how the new name, with its attendant logo and advertising campaign, would clearly distinguish the defendant's bank from plaintiffs' banks. Defendant's evidence tended to show that a confusion which might, at first, result from the change, would be mitigated by time and education of the public. Additionally, it is defendant's position that the public has some responsibility when it comes to dealing with financial institutions; some confusion is inevitable in that many financial institutions have similar names,[2] even the banks of the two plaintiffs.

---

1. *Standard Oil Company v. Standard Oil Company*, 10 Cir. 1958, 252 F.2d 65, 72, 76 A.L.R.2d 600, on appeal from the United States District Court for the District of Wyoming. The rule is also reflected in the public policy expressed by the statutory law of Wyoming pertaining to corporate organization and trade-name registration. Section 17–36.7(b) and (c), W.S.1957, provides that the corporate name:

 "(b) Shall not be the same as, or deceptively similar to, the name of any domestic corporation existing under the laws of this state or any foreign corporation authorized to transact business in this state, or a name the exclusive right to which is, at the time, reserved in the manner provided in this act [§§ 17–36.1 to 17–36.126].

 "(c) Shall not be the same as, or deceptively similar to, a trade name registered under the Wyoming Trade Names Registration Act, W.S. 40–7.15 through 40–7.25 except if the owner of the registered trade name shall file a written consent to the use of the registered trade name as a corporate name."

 Section 40–7.23(a)(i), W.S.1957, 1975 Cum. Supp., provides that no person shall:

 "(i) *Use in connection with his business,* without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a trade name registered under this act [§§ 40–7.15 to 40–7.25] in a manner likely to cause confusion, mistake, or deception of purchasers; * * *."

2. A defendant's exhibit in the record shows that in the State of Wyoming, there are 30

Preliminarily, there are some settled concepts with respect to trade names containing geographic and generic words. Since such words are claimed by plaintiffs to the exclusion of their use by defendant in their competitive banking businesses, we should start our discussion of the law with those hypotheses.

■ Subject to the rule of secondary meaning, the general rule is that a word or words in common use, when used in a primary sense, as designating a locality or section of the country, cannot be appropriated by anyone and made the subject of exclusive property. *Columbia Mill Company v. Alcorn,* 1893, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144. The court there pointed to the use of the word "Minnesota" as not a subject of exclusive use, inferring that the name of a state is not, by itself, subject to appropriation to the exclusion of others. Cases reflect a consistent holding to the same effect. *Colorado Association of Accountants v. Colorado Society of Certified Public Accountants,* 1963, 152 Colo. 563, 384 P.2d 94 ("Colorado"); *Dwight Lydell Chapter of Izaac Walton League of America v. Loeks,* 1951, 329 Mich. 342, 45 N.W.2d 311 ("West Michigan"); *National Bank in North Kansas City v. Bank of North Kansas City,* 1943, 238 Mo.App. 19, 172 S.W.2d 967 ("North Kansas City"); *Yonkers Sav. Bank v. Yonkers Savings & Loan Ass'n,* 1940, 174 Misc. 973, 22 N.Y.S.2d 368, aff'd, 262 A.D. 755, 28 N.Y.S.2d 715 ("Yonkers"); *Bank of Arizona v. Arizona Central Bank,* 1932, 40 Ariz. 320, 11 P.2d 953 ("Arizona"); *Detroit Sav. Bank v. Highland Park State Bank of Detroit,* 1918, 201 Mich. 601, 167 N.W. 895 ("Detroit"); *Esselstyn v. Holmes,* 1911, 42 Mont. 507, 114 P. 118 ("Owl Creek"); *California Apparel Creators v. Wieder of California,* U.S.D.C., S.D.N.Y. 1946, 68 F.Supp. 499, aff'd in part and appeal dismissed, 162 F.2d 893, 174 A.L.R. 481, cert. den., 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393 ("California"; two competing companies went under the names of "California Sportswear Company" and "California Sportswear, Inc."); *Gerson v. Iowa Pearl Button Co.,* U.S.D.C., S.D.N.Y. 1918, 254 F. 363 ("Iowa").

■ Subject to the rule of secondary meaning, the general rule is also that a generic word in common use, when used in its primary sense, is regarded as common property, provided it is not used in a trade name in combination with other words, so that it is probable they would mislead persons possessing ordinary powers of perception. *Farm Service, Incorporated v. United States Steel Corporation,* 1966, 90 Idaho 570, 414 P.2d 898; *Fidelity Appraisal Co. v. Federal Appraisal Co.,* 1933, 217 Cal. 307, 18 P.2d 950. In a case dealing particularly with the word "First", the court observed that the word, as part of a trade name, does not in itself warrant a conclusion that its use by a competitor is for the purpose of deception, without specific facts as to how it will deceive the public in the exercise of ordinary care, into believing that the word "First" might belong, through usage, to another and that the services of the defendant are really those of the plaintiff. *First Federal Savings & Loan Ass'n v. First Finance & Thrift Corp.,* 1951, 207 Ga. 695, 64 S.E.2d 58. See also *United Life Ins. Co. v. United Ins. Co.,* Fla. 1954, 70 So.2d 310 ("United"); *Federal Securities Co. v. Federal Securities Corporation,* 1929, 129 Or. 375, 276 P. 1100, 66 A.L.R. 934 ("Federal"); *International Trust Co. v. International Loan & Trust Co.,* 1891, 153 Mass. 271, 26 N.E. 693 ("International"); *Fidelity Bond & Mortgage Co. v. Fidelity Bond & Mortgage Co. of Texas,* 5 Cir. 1930, 37 F.2d 99 ("Fidelity").

■ Even though geographic and generic words are generally held to be common property not susceptible of exclusive appropriation, there has grown up a rule that if a business has developed to a point, such words of its name may acquire a secondary

"First National Bank[s]" and seven incorporating the name "Wyoming" in their names. The latter number is exclusive of the total there will be after Wyoming Bancorporation completes changing the names of all its member banks, at which time, there will then be 24. Other exhibits show frequent use of the word "First" and name of the State for Colorado, Virginia and Alabama banks.

meaning which the law protects to the extent necessary to prevent confusion, mistake or deception of the public and appropriate to the circumstances. What is commonly called a secondary meaning to a geographic or generic word occurs when by the process of association, the word becomes distinctive and distinguishes not only the producer of a particular service and its quality but also the name of the producer of that service. Plaintiffs contend that such is the case with respect to the "Wyoming" and "First" in their separate names.

 In considering the issue of whether or not plaintiffs have established secondary meaning in their trade names, in "Wyoming" and "First", we are not without guidance in this state. In 1945, this court discussed extensively the requirements for establishing a protected trade name and enjoining parties from interference with that name. *Bernstein v. Friedman,* 1945, 62 Wyo. 16, 160 P.2d 227. Additionally, there is the case of *Standard Oil Company v. Standard Oil Company,* supra, footnote 1, originating in the United States District Court for Wyoming. Both of those cases make it abundantly clear that the questions before us are largely factual determinations to be made by the trier of fact. Therefore, unless the findings of the trial court are clearly erroneous or contrary to the great weight of the evidence, they will not be disturbed on appeal. *Willis v. Asbury Transportation Co.,* Wyo. 1963, 386 P.2d 934, 937; *Arnold v. Jennings,* 1956, 75 Wyo. 463, 296 P.2d 989; *United States of America v. Oregon State Medical Society,* 1952, 343 U.S. 326, 330–332, 339, 72 S.Ct. 690, 96 L.Ed. 978. We cannot substitute our judgment for that of the trial court on findings of fact. *Zullig v. Zullig,* Wyo. 1972, 502 P.2d 198. Even in the absence of specific findings of fact, in conventional form, a judgment for the successful party carries with it every favorable finding of fact which can be reasonably and fairly drawn from the evidence. *Zitterkopf v. Roussalis,* Wyo. 1976, 546 P.2d 436.

 In *Bernstein v. Friedman,* supra, two Cheyenne merchants, whose businesses were in close proximity, came into a conflict over the use of a sign. The controversial sign displayed, among other words, the term "Western Outfitters". It was placed on the side of defendant's building. Defendant's retail store was across the street from plaintiff's store, which had prominently displayed its name, "Western Ranchman Outfitters". Plaintiff introduced evidence to show how over the years he had spent large sums on advertising which emphasized the store's name. Justice Blume, citing as authority 150 A.L.R. 1087–1089, stated that the amount spent on advertising as well as the scope, nature and duration, are important considerations in determining whether a party has established a secondary meaning in a particular name and pointed out that geographic and generic terms are not exempt from appropriation when they are not being used exclusively in their primary sense, i. e., when a secondary meaning has attached. Use of a name for a long period of time alone is evidence of the association between that name and particular goods and services. If a secondary meaning is established, the person, firm, or corporation, using such trade name, is entitled to protection against use by another in the territory in which the name is understood in a secondary sense. *Bernstein v. Friedman,* 160 P.2d at 229. Generally, many of the same principles that apply to the law of unfair competition also apply to the law of trade names.[3]

Helpful to our analysis of this problem is a three-step evaluation process, adopted by the court in *Standard Oil Company v. Standard Oil Company,* supra, at 72. The pertinent considerations, as applied to the case before us, are:

1. How similar the names are in appearance, sound and meaning;

2. The purpose or intent of Security Bank & Trust in adopting a new name; and

**3.** *Standard Oil Company v. Standard Oil Company,* supra, at 71; *Bernstein v. Friedman,* supra, 160 P.2d at 229.

3. The degree of care likely to be exercised by customers.

Although no formal findings of fact or conclusions of law were timely requested nor prepared by the court at its own instance, the record does contain the closing comments of the trial judge. Those comments indicate that the trial court, following the dictates of *Bernstein v. Friedman,* considered the similarity between the names. The possibility of deception and confusion was also discussed. The trial judge concluded, after reviewing and considering the evidence before it, that because of the tremendous competition between the parties, "between all banks", defendant Security Bank & Trust was not engaging in unfair competition in its actions in changing its name to First Wyoming Bank-Casper. While the comments are significant, they are no substitute for findings of a complete nature.

In addition to the competitive aspect of the parties' relationship, as noted by the trial judge, it is important to look at the combination of words used in the parties' names, as he apparently did, by placing them in juxtaposition. One of the appellants has the word "First" in its name and the other has the word "Wyoming". Neither plaintiff has both words, and both plaintiffs have words in combination with the contested terms which are different from defendant's chosen name. We must examine the names of each, as a whole. One plaintiff's name is "First National Bank" and the other plaintiff's name is "Wyoming National Bank." The significant word "National"[4] is a distinguishing feature in the names of both plaintiffs. Defendant's name does not contain the word "National", since it is a state-chartered bank.

This court noted in *Bernstein v. Friedman,* supra, that it was the combination of

words that was offensive.[5] It was more than the use of "Western" and more than the use of "Outfitters" that amounted to unfair competition. The joining of those two words—the sound of the words when combined—cause the confusion, 160 P.2d, supra, at 233.

■ First Wyoming Bank is somewhat similar to First National Bank. First Wyoming Bank does bear some resemblance to Wyoming National Bank. In fact, all bear some similarity to each other, even as between the plaintiff banks. And although we must look at the similarities, the dissimilarities are also apparent.[6] We cannot consider resemblances alone because the differences negative the likenesses. It does not take close examination to tell the differences. A question of fact is presented upon which reasonable minds might differ as to whether the new name of defendant is likely to confuse. We have no reason to disagree with the trial judge that the names of plaintiffs are readily distinguishable from that proposed by defendant and not likely to confuse, deceive or mislead when listened to and eyeballed as to sound, appearance and meaning, viewed against the totality of circumstances here existing.

■ Evidence was presented to the trial court on the issue of intent. Defendant presented a number of reasons why all 17 banks of the holding company, Wyoming Bancorporation, are using the same name. Obviously, advertising may be unified, there is a saving in volume buying of supplies, having the same name and logo and smaller or newer banks may benefit by making known their association with larger and more prosperous banks. Changing the name of defendant was not directed at the plaintiff banks, but part of a statewide program. We are not unmindful of the policy that should confusion and deception

---

4. National Banks are required to have the word "National" in their names, 12 U.S.C., § 22.

5. See also, *Fidelity Appraisal Co. v. Federal Appraisal Co.,* 1933, supra.

6. *Bernstein v. Friedman,* supra, 160 P.2d at 232; *Proctor & Gamble Co. v. Globe Refining Co.,* 6 Cir. 1899, 92 F. 357, 364, C.C.A. 405; *Coats v. Merrick Thread Co.,* 1892, 149 U.S. 562, 13 S.Ct. 966, 37 L.Ed. 847; *Corbin v. Gould,* 1889, 133 U.S. 308, 312–313, 10 S.Ct. 312, 33 L.Ed. 611.

result from use of a particular name, fraud will be presumed regardless of intent and that alone may shape the basis for equitable relief. *Bernstein v. Friedman, supra,* at 230. However, the intent of defendant does provide a pertinent fragment of the entire picture, though not controlling. The total setting must be considered. All the circumstances must be evaluated.[7]

In testing the findings of the trial judge, the responsibility of the public must be considered. That is, what is the effect of this name change on a consumer exercising due care in the market place—what is the likelihood of confusion? The burden cannot be placed upon the business community to lead a member of the public by the hand to the business of his choice. This may be particularly true when consumers are dealing with financial institutions. Customers of banks and other business establishments must assume some responsibility for using reasonable care.[8] Whether the likelihood that the public would be confused when exercising care is a question of fact to be resolved by the trial judge. Substantial evidence was presented by both sides to support their contentions. Witnesses who worked with the survey testified and were thoroughly cross-examined.

Defendant emphasized that in *Standard Oil Company v. Standard Oil Company, supra,* the plaintiffs produced a large number of witnesses to testify that they thought the names involved were confusingly similar. Plaintiffs here, place great reliance on a survey. We do not necessarily denigrate the value of surveys but they lack the value found in cross-examination of live witnesses. It must be realized, also, that here we have a case in which the name, First Wyoming Bank, has never been used by defendant so there is no evidence of any consequence that any actual confusion or deception exists. The expert witness for defendant, testifying as to the validity of a survey conducted prior to a name change, responded that such surveys are not fruitful, because largely speculative. He further pointed out promotion and advertising by competitors avoid confusion and consumers become aware of name changes. In any event, the accuracy of the survey was generally challenged by one, also presented as an expert in the field. The trial judge was apparently unconvinced by the survey. The technical adequacy of a survey is a matter of weight to be attached to it and its validity may be rebutted. *Standard Oil Company v. Standard Oil Company, supra,* citing *United States v. 88 Cases More or Less Containing Bireley's Orange Beverage,* 3 Cir. 1951, 187 F.2d 967, cert. den., 342 U.S. 861, 72 S.Ct. 88, 96 L.Ed. 648.

Another aspect of the confusion question concerns those persons who are likely to be deceived or confused into patronizing one bank rather than another. Plaintiffs may themselves be recipients of business intended for the defendant. Plaintiffs pointed out in their case that many new people are drawn to Casper by the mineral development and a growing portion of their business comes from new accounts. An early United States Supreme Court case commented on such a problem. Customers may be mistaken but when that is just as true as to the product of all the parties, there is no

---

7. *Standard Oil Company v. Standard Oil Company, supra,* at 74; *Coats v. Merrick Thread Co., supra,* 149 U.S. at 573, 13 S.Ct. 966; *Prudential Insurance Company of America v. Prudential Life and Casualty Insurance Company,* Okl. 1962, 377 P.2d 556, 561.

8. *Farm Service, Incorporated v. United States Steel Corporation, supra,* 414 P.2d at 909; *Buffalo Typewriter Exchange, Inc. v. McGarl,* 1925, 240 N.Y. 113, 117, 147 N.E. 546, 547; *Yonker's Sav. Bank v. Yonker's Savings & Loan Ass'n,* 22 N.Y.S.2d, supra, at 369, citing *Corning Glass Works v. Corning Cut Glass Co.,* N.Y. Ct.App. 1910, 197 N.Y. 173, 180, 90 N.E.

449, 451; *Corbin v. Gould, supra,* at 133 U.S. 313. Confusion may not be entirely eliminated as to the careless. *United Life Insurance Company v. United Ins. Co., supra,* 70 So.2d at 312. In *Glenmore Distilleries Co. v. National Distillers Products Corporation,* D.C., 1938, 23 F.Supp. 928, aff'd 4 Cir., 101 F.2d 479, cert. den. 307 U.S. 632, 59 S.Ct. 835, 83 L.Ed. 1515, the court thought that purchaser exercising ordinary caution ought to be able to distinguish between "Kentucky Tavern" whiskey and "Town Tavern" whiskey by ocular comparison of the whole ensemble of words.

moral or legal wrong done. *Canal Company v. Clark,* 1871, 80 U.S. 311, 13 Wall 311, 327, 20 L.Ed. 581. We also have some difficulty associating the new accounts by new people with the doctrine of secondary meaning, because they may not be aware of plaintiffs' reputation and, therefore, attracted by its name. There is no indication that the plaintiffs enjoy a nationwide or even statewide fame, except perhaps in banking circles.

It has been said that a broader latitude has been allowed in the matter of similarity of names of banks than perhaps in the ordinary commercial enterprises. *Senner v. Bank of Douglas,* 1960, 88 Ariz. 194, 354 P.2d 48; *New York Trust Co. v. New York County Trust Co.,* 1925, 125 Misc. 735, 211 N.Y.S. 785, 786, aff'd, 215 App.Div. 699, 212 N.Y.S. 882.

The conclusion of the trial court is not unreasonable in light of the evidence and the applicable law of trade names. This case is one of conflicting evidence, as was *Bernstein v. Friedman,* supra. We cannot conclude that the trial court was clearly erroneous in his judgment or acted against the great weight of evidence and that the defendant would be feeding on plaintiffs' trade.

There are arguments concerning injunctive relief presented in this appeal which we will not reach, having decided that the trial court was not in error in finding no confusing similarity, either primary or secondary, and ultimately no unfair competition arising as a result of defendant's planned name change. The merits of injunctive relief and the requirements for such a remedy would be a purely academic discussion at this time.[9]

Affirmed.

9. We would point out, however, guidance has previously been provided by this court on questions concerning equitable relief in trade name cases. *Bernstein v. Friedman,* supra, 160 P.2d at 234.